UNITED STATES of America, Appellee,

v.

James HOLLMAN, Appellant.

No. 76–1135.

United States Court of Appeals,
Eighth Circuit.

Submitted May 10, 1976.
Decided Aug. 30, 1976.

James R. Rhodes, III, Little Rock, Ark., for appellant.

Walter G. Riddick, Asst. U. S. Atty., Little Rock, Ark., for appellee; W. H. Dillahunty, U. S. Atty., and Walter G. Riddick, Little Rock, Ark., on brief.

Before BRIGHT, STEPHENSON and WEBSTER, Circuit Judges.

WEBSTER, Circuit Judge.

James Hollman appeals his conviction in a jury-waived trial of unlawfully carrying a firearm during the commission of a federal felony in violation of 18 U.S.C. § 924(c).

On June 3, 1975, three police detectives of the Little Rock Police Department assigned to narcotics work had appellant's residence under surveillance. At approximately 8:45 p. m., they saw him leave in an automobile driven by one Robert Bolden, who was known to them as a narcotics user. They followed Bolden and appellant in an unmarked vehicle for some distance. The detectives observed Bolden "weaving" and occasionally crossing lanes, and apparently decided to stop the car on this basis because they radioed for the assistance of a marked police vehicle. Shortly thereafter Bolden made a right turn at an intersection, and the officers noted that while the headlights were on, the taillights were not.[1]

The detectives promptly signalled Bolden to stop and pulled up alongside his car. Two detectives walked to the driver's side of the car and asked to see Bolden's driver's license. The third detective approached the passenger side of the car from the rear, and as he did so he was a hand apparently throw an object from the passenger side of the car and then heard a loud thump. Upon investigation, he found a small box containing metal foil wrapped packets of a brown powdery substance about fifteen feet from the car. Altogether, 127 small packets were found scattered in the area.

The officers thereupon arrested Bolden and appellant. In searching appellant the detectives found a loaded .25 caliber automatic pistol and more than $2,000 in cash. Bolden and appellant were taken to police headquarters, where appellant was charged with possession of heroin with intent to sell and Bolden was issued a citation for operating a vehicle without taillights.[2]

Appellant was ultimately brought to trial on the federal charge of violation of 18 U.S.C. § 924(c). Following a full hearing, the District Court[3] denied a motion to suppress the evidence of the gun, the narcotics, and the observations of the detectives. A jury was waived, and the suppression hearing was taken as a part of the case in a trial that resulted in conviction.

In this appeal, appellant challenges (1) the denial of his motion to suppress evidence, (2) the sufficiency of the evidence to support a finding of knowing possession of heroin with intent to distribute, and (3) the competency of the expert witness who testified that the packets contained heroin. We reject these contentions and affirm the judgment of conviction.

## I.

### Suppression of Evidence

The most serious contention advanced by appellant is that the evidence of the gun and the narcotics was obtained as a result of a pretextual stop in violation of his Fourth Amendment rights. The District Court did not make an explicit finding on the purpose of the stop but did express doubts that a narcotics team would have stopped a car solely because its taillights were out.[4] We share the same doubts, and had the search been made pursuant to such stop it is unlikely that we could permit the conviction to stand.

"An arrest may not be used as a pretext to search for evidence." *United States v.*

1. Operating a motor vehicle with defective taillights is a misdemeanor in Arkansas. Ark.Stat. Annot. §§ 75–701, 75–704, 75–711, 75–1037.

2. Appellant was convicted in state court of possession of heroin with intent to sell. Following local practice, the state misdemeanor charge against Bolden was dropped when he repaired his taillights.

3. The Honorable G. Thomas Eisele, Chief Judge, United States District Court for the Eastern District of Arkansas.

4. In denying the motion to suppress, the District Court stated:

It may well be that the officers have not been as candid as they should be with the Court as to their reasons for stopping in the sense that insofar as they stopped it to get a

*Lefkowitz,* 285 U.S. 452, 467, 52 S.Ct. 420, 424, 76 L.Ed. 877 (1932).[5] "The circumstances justifying the search in each case must give rise to probable cause and reasonableness." *United States v. Jones,* 452 F.2d 884, 888 (8th Cir. 1971). *See Amador-Gonzalez v. United States,* 391 F.2d 308, 313 (5th Cir. 1968); *Taglavore v. United States,* 291 F.2d 262, 265 (9th Cir. 1961). *See generally Marron v. United States,* 275 U.S. 192, 48 S.Ct. 74, 72 L.Ed. 231 (1927). It has been suggested that even objects within "plain view" may not be seized if they were seen following a pretextual stop for a minor offense. *United States v. Santana,* 485 F.2d 365, 367–68 (2d Cir. 1973), *cert. denied,* 415 U.S. 931, 94 S.Ct. 1444, 39 L.Ed.2d 490 (1974).

Appellant's claim to the protection of this rule must fail, however, upon closer analysis. First, we assume the stop was pretextual. It requires no extensive recitation of facts to support a conclusion that the detectives intended to accomplish more than removal from the highway of an automobile with defective taillights. They were on a narcotics assignment. They were following a car driven by a narcotics user and carrying a suspected narcotics peddler. They conceded that they would not have stopped "any" car with defective lights and none had stopped a car for this misdemeanor in recent memory. The decision to stop the car had been made before the defective

taillights were observed, presumably for "weaving" since no claim is made that the detectives possessed any other probable cause to make the stop. Our reading of the District Court's statement denying the motion to suppress and our own independent conclusion following a study of the record is that the stop can only be regarded as a pretext to search the car.

■ On the other hand, the facts of this case, taken in the light most favorable to the government, do not support a conclusion that there was no probable cause at all to stop the car.[6] If a traffic officer had observed the defective lights, it cannot be doubted that he could properly have stopped the car. The detectives in this case likewise had probable cause to stop the car; what they lacked was a justification to conduct an exploratory search as an incident to that stop or any arrest based upon such probable cause.

■ The distinction between this case and others previously cited is the occurrence of an event before formal arrest that supplied an independent and viable basis to support an arrest on the narcotics possession charge. While two of the officers were questioning Bolden about his driver's license and before any of them had used the pretextual stop as a springboard to make a search incident to arrest, appellant threw the box of heroin packets out of the car window. The officers recovered the pack-

dangerous vehicle off the road, that type of thing.

The officers were narcotic officers. They had this house under surveillance, one would assume, for reasons in connection with their duties.

They knew the record of the defendant and his involvement with narcotics and I suppose you've got to start with the theory that they suspicioned at the very least that he was involved in some such activity and their object was to surveil and determine if they could if that were so and probably catch him in the act.

\*    \*    \*    \*    \*    \*

I am convinced that the taillights were not operating and were not on. I don't believe this became really known to the officers until after they called the [patrol car]. In other words, until after they had decided to pull the defendant over.

But it did become obvious to them before they pulled him over. They may have planned to pull him over for adequate or inadequate reasons but they in fact pulled him over after noticing that the taillights did not work and they had a justification for doing it.

5. This basic rule was not affected by *United States v. Robinson,* 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973), since it was assumed in that case that the arresting officer had no ulterior motive in making the arrest. *Id.* at 221 n.1, 94 S.Ct. 467.

6. The District Court rejected as unbelievable Bolden's testimony intended to prove that the taillights were made inoperable at the police station by police officers.

ets outside the car and recognized them as apparently containing heroin. These objective facts, coupled with their knowledge of Bolden's reputation and appellant's suspected activities, supplied probable cause to make an arrest on the narcotics charge.[7] *See United States v. Geelan*, 509 F.2d 737, 743–44 (8th Cir. 1974), *cert. denied*, 421 U.S. 999, 95 S.Ct. 2396, 44 L.Ed.2d 666 (1975). *Cf. United States v. Stevens*, 509 F.2d 683, 687–88 (8th Cir.), *cert. denied*, 421 U.S. 989, 95 S.Ct. 1993, 44 L.Ed.2d 479 (1975). The subsequent search of appellant's person that produced the gun was therefore made incident to a lawful arrest, and it follows that the motion to suppress was properly denied.[8] *See Gustafson v. Florida*, 414 U.S. 260, 266, 94 S.Ct. 488, 38 L.Ed.2d 456 (1973).

## II.

### *Sufficiency of the Evidence*

Appellant contends that the evidence was insufficient to establish either (1) the fact of his possession of heroin or (2) the necessary intent to distribute it. The District Court found both elements to have been established by all the facts and circumstances, and we hold such findings were not clearly erroneous.

Bolden testified at trial for appellant and stated that the heroin was his; that he had it on his person for personal use; and that it was he, not appellant, who threw the box from the automobile. The District Court as trier of the facts rejected Bolden's testimony as unworthy of belief. The account of the government witness who saw the hand appear from the passenger side, confirmed by the two officers on the driver's side who saw no such motion by Bolden, was given credence, and we defer to the District Court's assessment of credibility.

■ Possession may be proved by circumstantial evidence. *United States v. Hutchinson*, 488 F.2d 484, 489 (8th Cir. 1973), *cert. denied*, 417 U.S. 915, 94 S.Ct. 2616, 41 L.Ed.2d 219 (1974); *United States v. Stephenson*, 474 F.2d 1353, 1355 (5th Cir. 1973); *Mack v. United States*, 326 F.2d 481, 484 (8th Cir.), *cert. denied*, 377 U.S. 947, 84 S.Ct. 1355, 12 L.Ed.2d 309 (1964). The evidence supports the finding of the District Court that appellant threw the box from the automobile. This fact is a circumstance from which the District Court could, along with the other facts and circumstances of this case, conclude that appellant was in possession of the heroin. *United States v. Gudino*, 432 F.2d 433, 434 (9th Cir. 1970); *United States v. Bridges*, 419 F.2d 963, 968 (8th Cir. 1969); *Smith v. United States*, 385 F.2d 34, 38–39 (5th Cir. 1967).

■ Intent to distribute may be established by circumstantial evidence.

> Intent to distribute may also be inferred from the large quantities of cocaine found in [defendant's] residence. Such large quantities constitute evidence that the cocaine was not kept by [defendant] merely for personal use. *See United States v. Blake*, 484 F.2d 50 (8th Cir. 1973); *United States v. Wilkerson*, 478 F.2d 813 (8th Cir. 1973); *United States v. Echols*, 477 F.2d 37 (8th Cir.), *cert. denied*, 414 U.S. 825, 94 S.Ct. 128, 38 L.Ed.2d 58 (1973).

---

7. It is not clear from the record how the arrest was articulated at the time it was made. In *Klingler v. United States*, 409 F.2d 299, 306 (8th Cir.), *cert. denied*, 396 U.S. 859, 90 S.Ct. 127, 24 L.Ed.2d 110 (1969), we held that the existence in fact of probable cause for a robbery arrest prevented a vagrancy arrest from being pretextual.

8. We reject appellant's attempt to bring the seized packets within the protection of the Fourth Amendment. While the stop may have been pretextual in the sense that it was an excuse for a search, there is no claim of "dropsy perjury". *See* Comment, *Police Perjury in Narcotics "Dropsy" Cases: A New Credibility Gap*, 60 Geo.L.J. 507 (1971). The only dispute in the evidence results from Bolden's testimony that he and not appellant threw the box. The government is entitled to the District Court's finding on this issue, which is not clearly erroneous. The jettison of the packets was not an attempt to prevent a search following a pretextual arrest, *see Taglavore v. United States*, 291 F.2d 262 (9th Cir. 1961) (unsuccessful attempt to swallow marijuana); nor did it follow an illegal entry. *See Hobson v. United States*, 226 F.2d 890 (8th Cir. 1955). It was rather an abandonment of the evidence outside the area protected by the Fourth Amendment.

*United States v. Hutchinson, supra,* 488 F.2d at 489 n. 10. The circumstances of this case included the 127 small metal foil packets containing heroin. There was testimony that these "papers" were of normal retail size and had a retail value of $20.00 each. The District Court questioned whether an individual user would break down his own personal supply into papers. The nature, quantity, and street value of the narcotics seized were factors that the trier of the facts could properly consider in assessing the presence or absence of the requisite intent to distribute. *See, e. g., United States v. Marchildon,* 519 F.2d 337, 344–45 (8th Cir. 1975); *United States v. Luciow,* 518 F.2d 298, 301 (8th Cir. 1975); *United States v. Hutchinson, supra,* 488 F.2d at 489 n. 10; *United States v. Blake,* 484 F.2d 50, 58 (8th Cir. 1973), *cert. denied,* 417 U.S. 949, 94 S.Ct. 3076, 41 L.Ed.2d 669 (1974); *United States v. Lawson,* 483 F.2d 535, 537 (8th Cir. 1973), *cert. denied,* 414 U.S. 1133, 94 S.Ct. 874, 38 L.Ed.2d 757 (1974); *United States v. Wilkerson,* 478 F.2d 813, 815 (8th Cir. 1973); *United States v. Echols,* 477 F.2d 37, 40 (8th Cir.), *cert. denied,* 414 U.S. 825, 94 S.Ct. 128, 38 L.Ed.2d 58 (1973). The presence in the car of a known narcotics user was another circumstance supporting the conclusion of the District Court that the heroin was intended for distribution rather than for personal consumption. There was thus substantial evidence from which the District Court could infer that appellant possessed the heroin with intent to distribute, and these findings were not clearly erroneous.

### III.

#### Expert Testimony

Our conclusion under Part II that the evidence was sufficient to support the District Court's finding that appellant knowingly possessed heroin with intent to distribute it presupposes, of course, that the substance found in the packets was in fact heroin. Kenneth Micheau, the government's expert witness, testified that it was heroin, and no evidence appears in the record to the contrary. Appellant contends, however, that the expert's testimony was based upon hearsay and should have been stricken. This contention is without merit.

Micheau testified that he ran a screen test, using a Marquis reagent, on six of the packets found in the box thrown from the car. Such a test merely indicates the proper direction in which to proceed when analyzing a substance. He then emptied all 127 packets into a beaker, mixed them together, and ran a gas chromatography analysis on two samples taken from the mixture. This is a specific test for heroin. Next, he performed three thin layer chromatography analyses on two samples, running these tests with three different solvents. Finally, he performed an infrared analysis, comparing the confiscated substance with a known sample of heroin obtained from the Drug Enforcement Administration. The witness acknowledged that he was not personally familiar with the conditions under which the known sample was determined by the DEA to be heroin. He stated, however, that the known sample had been through all the tests that his laboratory performs on heroin samples, and that he personally tested the known sample against prior standards in the state laboratory and found them to be similar. While running each test on the unknown sample he ran a similar test on one of the standard samples. On the basis of all the tests performed on the unknown substance, Micheau was able to conclude that it contained heroin.

■ Appellant contends that this conclusion was based upon hearsay testimony and was therefore inadmissible. Appellant relies upon the general rule of exclusion of hearsay testimony. *See* Fed.R.Evid. 802. Such reliance is misplaced. Fed.R.Evid. 703 expressly provides:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

The Advisory Committee Note explains the application of the rule to this case:

Facts or data upon which expert opinions are based may, under the rule, be derived from three possible sources. * * The third source contemplated by the rule consists of presentation of data to the expert outside of court and other than by his own perception. In this respect the rule is designed to broaden the basis for expert opinions beyond that current in many jurisdictions and to bring the judicial practice into line with the practice of the experts themselves when not in court.

The requirement of the rule that the facts or data "be of a type reasonably relied upon by experts in the particular field" was satisfied in this case. Accuracy is a question of weight rather than admissibility, and appellant was afforded full opportunity to cross-examine the expert. The District Court thus did not err in admitting the expert's testimony.

Affirmed.