**UNITED STATES of America, Appellee,**

v.

**Ronald Louis JONES, Appellant.**

**No. 81–1540.**

United States Court of Appeals, Eighth Circuit.

Submitted July 14, 1982.

Decided Sept. 14, 1982.

Thomas E. Dittmeier, U. S. Atty., Mitchell F. Stevens, Asst. U. S. Atty., St. Louis, Mo., for appellee.

Murray Stone and Peter P. Fiore, Jr., St. Louis, Mo., for appellant.

Before LAY, Chief Judge, and HEANEY and McMILLIAN, Circuit Judges.

LAY, Chief Judge.

Ronald Louis Jones was charged in a two count indictment of possession with intent to distribute 32.13 grams of heroin and 3.58 grams of cocaine in violation of 21 U.S.C. § 841(a)(1). Jones' indictment stemmed from a search of an automobile executed pursuant to a search warrant on February 19, 1981. Detective Mokwa, who searched the interior of the car, found a leather handbag on the front seat that contained an Alka-Seltzer box with ten plastic bags of a brown powder he believed to be heroin and ten plastic bags of a white powder he believed to be cocaine. Various items of narcotics paraphernalia were also found in the trunk of the car. The items were seized and Jones was placed under arrest.

Jones was tried before a jury and found guilty of both counts. On May 15, 1981, the district court sentenced Jones to two consecutive five-year terms of imprisonment. Jones appeals his conviction and urges errors in evidentiary rulings as well as a constitutional challenge to the composition of the jury venire.[1] For the reasons set out below, we affirm.

*Chain of Custody.*

Jones first contends that the district court abused its discretion by admitting the

---

1. In his brief the defendant had contended that the search of the handbag was beyond the scope of a search warrant for the interior of the automobile. However, at oral argument counsel conceded that this issue is now controlled by the Supreme Court's decision in *United States v. Ross*, —— U.S. ——, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982). In *Ross* the Supreme Court held: "If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *Id.* at ——, 102 S.Ct. at 2172.

cocaine and heroin into evidence because a sufficient chain of custody had not been established. At trial, the government's expert witness, Messler, was allowed to testify that the bags contained heroin and cocaine before the chain of custody of the bags had been established. When the government attempted to prove the chain of custody, Detective Mokwa testified that the evidence had been in his possession until it was turned over to the evidence clerk at the police lab. On cross-examination, defendant's counsel showed Mokwa a document that indicated Detective McDonough had delivered the evidence to the lab. Mokwa then produced a receipt signed by the evidence clerk and himself that showed he had delivered the evidence to the lab.

This inconsistency was explained to the court outside the presence of the jury. Mokwa testified that McDonough was his partner and was with him when the evidence was delivered to the lab. McDonough had seized other evidence not relevant to this case at another location, delivered it to the lab at the same time, and the lab placed McDonough's name on some of the papers. The government's attorney explained that the document with McDonough's name on it had not been prepared at the time the evidence was received, but a month later when Messler performed a qualitative analysis of the evidence.

The district court reasoned that although defense counsel could have been misled, there was, however, insufficient error to warrant declaring a mistrial. The district court concluded that all appropriate measures to insure the safe custody of the evidence had been taken.

The Court of Appeals for the District of Columbia Circuit outlined the principles governing proof of chain of custody:

> Tangible evidence of crime is admissible when shown to be "in substantially the same condition as when the crime was

committed." And it is to be presumed that the integrity of evidence routinely handled by governmental officials was suitably preserved "[unless the accused makes] a minimal showing of ill will, bad faith, other evil motivation, or some evidence of tampering." If, however, that condition is met, the Government must establish that acceptable precautions were taken to maintain the evidence in its original state.

> The undertaking on that score need not rule out every conceivable chance that somehow the identity or character of the evidence underwent change. "[T]he possibilities of misidentification and adulteration [must] be eliminated," we have said, "not absolutely, but as a matter of reasonable probability." So long as the court is persuaded that as a matter of normal likelihood the evidence has been adequately safeguarded, the jury should be permitted to consider and assess it in light of the surrounding circumstances.

*United States v. Lane*, 591 F.2d 961, 962 (D.C.Cir.1979) (footnotes omitted), *quoted in United States v. Anderson*, 654 F.2d 1264, 1267 (8th Cir. 1981), *cert. denied*, 454 U.S. 1127, 102 S.Ct. 978, 71 L.Ed.2d 115 (1981) and 454 U.S. 1156, 102 S.Ct. 1030, 71 L.Ed.2d 314 (1982).

■ We find the evidence was handled according to established procedures. Further, the admissibility of evidence is primarily a determination to be made by the trial court. Such a determination "may not be overturned except for a clear abuse of discretion." *United States v. Brown*, 482 F.2d 1226, 1228 (8th Cir. 1973). The district court did not abuse its discretion here.

*Exclusion of Witness.*

■ At the beginning of the trial the court granted a motion to sequester all witnesses.[2] However, the government's "case agent," a St. Louis police officer, was al-

---

**2.** Fed.R.Evid. 615 provides:

At the request of a party the court shall order witnesses excluded so that they cannot hear

the testimony of other witnesses, and it may make the order of its own motion. This rule does not authorize exclusion of (1) a party

lowed to sit at the government's counsel table throughout the trial under the exception contained in subdivision (2) of rule 615. Defendant contends that subdivision (2) includes only federal officers and does not encompass local police officers. Although the issue has not been squarely decided, there is nothing in the cases or legislative history of the rule that suggests state or local officers should be treated differently than federal officers. *See, e.g., United States v. Shearer*, 606 F.2d 819, 821 (8th Cir. 1979); *United States v. Woody*, 588 F.2d 1212, 1213 (8th Cir. 1978), *cert. denied*, 440 U.S. 928, 99 S.Ct. 1263, 59 L.Ed.2d 484 (1979); *In re United States*, 584 F.2d 666, 667 (5th Cir. 1978); S.Rep.No.1277, 93rd Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Ad.News 7051, 7072–73.

■ In granting defendant's pretrial motion to sequester the witnesses, in which the government joined, the trial court specifically stated that it was customary practice to allow the government to have the "case agent" present. The record shows Detective Hegger was one of the officers who searched the car. The sequestration of witnesses lies peculiarly within the discretion of the trial judge. Here, we find no abuse of discretion.

### Expert Testimony.

■ The defendant urges that the trial court erred in admitting expert testimony that the seized substance was cocaine without laying sufficient foundational proof. The government's expert witness, Messler, ran several tests on the seized substance and testified that it was cocaine. The comparison sample for these tests had not been tested personally by Messler, but rather had been furnished by a drug manufacturer and purported to be cocaine. Jones contends that under Federal Rule of Evidence 703

this sample was not the type of data upon which an expert could reasonably rely.

We rejected an almost identical argument in *United States v. Hollman*, 541 F.2d 196, 200–01 (8th Cir. 1976). In *Hollman* the expert was not familiar with the conditions under which a sample had been determined to be heroin and the defendant argued the expert's testimony was based on hearsay. This court concluded that such data met the rule 703 requirement and therefore was "a type reasonably relied upon by experts in the particular field." *Id.* at 201 (quoting Fed.R.Evid. 703). Following *Hollman*, we conclude that the district court did not err in admitting the testimony.

### Composition of the Jury Venire.

As a final contention Jones, who is black, urges that he was denied a fair trial because the all-white jury venire was not chosen from a fair cross-section of the community in violation of the Jury Selection and Service Act (Act), 28 U.S.C. §§ 1861–1869 and the due process clause. All 36 people from whom Jones' petit jury was drawn were white. Defense counsel objected after voir dire that not a single person on the panel was black, although conceded that he had no evidence of systematic exclusion of blacks. The trial court overruled the objection but noted that it was unusual not to find any blacks in the entire jury panel. At an evidentiary hearing on this issue Jones introduced expert testimony that at least 15.85% of the population in the Eastern District of Missouri is black. Based on that percentage and using entirely random selection procedures, the expert testified that the chances of having no blacks on the jury panel was five out of 1000.

Testimony was given by the clerk of court for the Eastern District of Missouri about the selection procedure used. She testified that the 36-member venire from

who is a natural person, or (2) an officer or employee of a party which is not a natural person designated as its representative by its

attorney, or (3) a person whose presence is shown by a party to be essential to the presentation of his cause.

which defendant's jury was drawn was selected from the 1976 general election voter registration lists. The jury clerk also testified that from these lists they estimated the number of jurors that would be needed and sent out qualification questionnaires to that number of people. After people have qualified by the returned questionnaires, the jury clerk uses further random procedures to produce the names of the jurors assigned to each of the district courts. The jury clerk admitted that she did not check to determine whether the random procedure used did, in fact, produce a fair cross-section of the community.

■ The district court determined that the procedures used were in substantial compliance with the Act, and that in any event the defendant was barred from raising noncompliance with the Act. The Act sets out the exclusive means of challenging a jury for noncompliance with the Act in section 1867(a):

> In criminal cases, before the voir dire examination begins, or within seven days after the defendant discovered or could have discovered, by the exercise of diligence, the grounds therefor, whichever is earlier, the defendant may move to dismiss the indictment or stay the proceedings against him on the ground of substantial failure to comply with the provisions of this title in selecting the grand or petit jury.

In the instant case defendant failed to object before the voir dire examination began and the district court was correct in concluding that he was barred from claiming noncompliance with the Act. 28 U.S.C. § 1867(e); see United States v. Geelan, 509 F.2d 737, 740 (8th Cir. 1974), cert. denied, 421 U.S. 999, 95 S.Ct. 2396, 44 L.Ed.2d 666 (1975).

■ Jones is not barred, however, from raising the constitutional challenge to the jury selection procedure. 28 U.S.C. § 1867(e). This court has noted previously that: "The Constitution does not guarantee

a defendant a proportionate number of his racial group on the jury panel or the jury which tries him; it merely prohibits deliberate exclusion of an identifiable racial group from the juror selection process." United States v. Turcotte, 558 F.2d 893, 895 (8th Cir. 1977). To maintain his constitutional challenge the defendant must satisfy the three requirements set out by the Supreme Court in Duren v. Missouri, 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979):

> In order to establish a prima facie violation of the fair-cross-section requirement, the defendant must show (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this under-representation is due to systematic exclusion of the group in the jury-selection process.

Id. at 364, 99 S.Ct. at 668.

Even assuming that the first two requirements have been met, there is no evidence of systematic exclusion in the jury selection procedure. On the contrary, at the evidentiary hearing on this issue the evidence showed that the procedure used in the Eastern District of Missouri was an entirely random one. No evidence was introduced regarding the composition of other venires in the district. There was no evidence that the use of voter registration lists excluded an identifiable group in the community. Absent such evidence, this court recently held that the sole use of voter registration lists for jury selection is permissible. In United States v. Clifford, 640 F.2d 150 (8th Cir. 1981), we stated:

> [T]here has been no showing that juries are not selected from a fair cross section of the community or that there has been exclusion of jurors based on any basis other than failure to register to vote. Absent the showing of systematic exclusion of a class of qualified citizens, voter registration lists may be used as the sole

source of persons to serve on petit juries. The mere fact that one identifiable group of individuals votes in a lower proportion than the rest of the population does not make a jury selection system illegal or unconstitutional.

*Id.* at 156 (citations omitted).

The evidence does not show a constitutional violation.

The judgment of the trial court is affirmed.