892 F.2d 696
 29 Fed. R. Evid. Serv. 318
 UNITED STATES of America, Appellee,
v.
Robert Lee HOUSTON, Appellant.
UNITED STATES of America, Appellee,
v.
Leonard H. COASTON, a/k/a "Tweedy", Appellant.
UNITED STATES of America, Appellee,
v.
Maurice L. REED, a/k/a "Swanny Fly", Appellant.
UNITED STATES of America, Appellee,
v.
Donna L. HUBBARD-THOMAS, a/k/a "Dora", Appellant.
UNITED STATES of America, Appellee,
v.
Kevin Lee COLVIN, Appellant.
UNITED STATES of America, Appellee,
v.
John Michael JONES, a/k/a "Shorty", Appellant.
UNITED STATES of America, Appellant,
v.
Leonard H. COASTON, Appellee.
UNITED STATES of America, Appellant,
v.
Maurice L. REED, a/k/a "Swanny Fly", Appellee.
UNITED STATES of America, Appellant,
v.
Donna L. HUBBARD-THOMAS, a/k/a "Dora", Appellee.
UNITED STATES of America, Appellant,
v.
Kevin Lee COLVIN, Appellee.
UNITED STATES of America, Appellant,
v.
John Michael JONES, a/k/a "Shorty", Appellee.
UNITED STATES of America, Appellant,
v.
Robert Lee HOUSTON, Appellee.
 Nos. 89-5039 to 89-5044 and 89-5072 to 89-5077.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Sept. 11, 1989.
Decided Dec. 19, 1989.
 
 James F. Ostgard, Minneapolis, Minn., for Houston.
 Scott Tilsen, Minneapolis, Minn., for Coaston.
 Paul Ahren, Minneapolis, Minn., for Reed.
 Steven A. Pihlaja, Minneapolis, Minn., for Hubbard-Thomas.
 Leon A. Trawick, Minneapolis, Minn., for Colvin.
 Mark D. Nyvold, Minneapolis, Minn., for Jones.
 Denise Reilly, Asst. U.S. Atty., Minneapolis, Minn., for appellee.
 Before ARNOLD and BEAM, Circuit Judges, and HENLEY, Senior Circuit Judge.
 BEAM, Circuit Judge.
 
 
 1
 Six defendants appeal from verdicts and sentences resulting from their joint trial. The defendants were found guilty on various counts of conspiracy to manufacture and distribute "crack" cocaine, of possession with intent to distribute and manufacture cocaine, and of aiding and abetting the possession with intent to distribute cocaine.[1] The government cross-appeals, claiming that the appellants should have been sentenced under the Federal Sentencing Guidelines. We affirm both the convictions and the sentences.
 
 I. BACKGROUND
 
 2
 On August 18, 1988, Roland Adkins telephoned the Minneapolis Police Department Narcotics Squad. Adkins told officers that he had been involved with a group of people selling cocaine. Adkins indicated that he had been given some crack to sell, but that he had consumed the crack. Adkins requested assistance in retrieving his family from his home.
 
 
 3
 The police arranged a meeting, and later that day, Adkins met with several officers. Adkins rode in the police car and directed the officers to a house at 3019 Emerson Avenue, North in Minneapolis. Adkins said that several days earlier, he had driven "Shorty" (defendant Jones) to the 3019 Emerson Avenue address to store some cocaine in the house. Adkins gave the officers the names of people who had been involved in the manufacture and distribution of crack cocaine. Adkins also told officers about drug activity at 2709 Twelfth Avenue, South in Minneapolis. This information corroborated the testimony that police had received from two other reliable informants.
 
 Search of 2709 Twelfth Avenue, South
 
 4
 Pursuant to Adkins' information, the police applied for a search warrant for 2709 Twelfth Avenue and the warrant was issued. The police planned to execute the warrant at 2709 Twelfth Avenue and, based on the results of that search, the police planned to apply for a search warrant for the 3019 Emerson Avenue duplex. Thus, the police prepared the search warrant application for 3019 Emerson Avenue and waited for the execution of the 2709 Twelfth Avenue warrant. At 6:35 p.m. on August 18, 1988, the police executed the warrant for 2709 Twelfth Avenue. The police seized a bag of cocaine powder and a bag of crack cocaine, firearms and ammunition, glass test tubes with cocaine residue, plastic bags, a triple beam scale, keys for a firesafe, and bus and airline tickets from Los Angeles to Minneapolis. The officers arrested defendants Reed, Colvin, Coaston and Hubbard-Thomas. At the time of the arrest, the police found $835 on Reed and $536 on Coaston.
 
 Surveillance of 3019 Emerson Avenue, North
 
 5
 At the time that the search of 2709 Twelfth Avenue was being conducted, the Police Department Narcotics Squad set up video surveillance of the duplex at 3019 Emerson Avenue. Sergeant James Murphy personally began visual surveillance at approximately 5:00 p.m. on August 18, 1988. Between 5:00 and 6:00 p.m., Sergeant Murphy walked by 3019 Emerson Avenue and observed a black male wearing a distinctive, lumberjack-type, red-and-black checkered shirt. The man was inside the lower level of the 3019 Emerson Avenue duplex. The individual was later identified as defendant Houston.
 
 
 6
 At 6:00 p.m., Sergeant Murphy turned on a video camera. Sergeant Murphy observed Houston leave 3019 Emerson Avenue on foot. Houston returned driving a 1977 brown Plymouth with Texas license plates. Houston parked the car in front of the 3019 Emerson Avenue duplex and went inside. Sergeant Murphy observed defendant Houston exit the duplex, followed by a man who was later identified as defendant Jones. Jones was carrying a "Pampers" diaper box. The two men got into the Plymouth and drove away.
 
 
 7
 At this time, the police knew of the arrests made, and of the cocaine and the shotguns found at 2709 Twelfth Avenue. Sergeant Murphy had received orders from the head of the Minneapolis Narcotics Squad to stop any person leaving the 3019 Emerson Avenue duplex. Sergeant Murphy radioed police officers to stop Jones and Houston in the Plymouth.
 
 
 8
 Responding to the radio message, police officers stopped the Plymouth a few blocks from the duplex. Following the Minneapolis Police procedure for felony stops, the officers ordered Jones and Houston out of the vehicle at gunpoint and instructed the defendants to lie on the ground face down. While standing outside of the Plymouth, Minneapolis Narcotics Officer Peter Jackson observed cocaine in a plastic bag in the Pampers box. Subsequent laboratory analysis revealed that the bag contained 254 grams of cocaine and 24 grams of crack cocaine. Officer Jackson returned the cocaine to the Pampers box inside the Plymouth, and ordered that the Plymouth be towed, impounded, and secured. Defendants Houston and Jones were arrested and taken into custody.
 
 Search of 3019 Emerson Avenue, North
 
 9
 Following the arrest, the police executed the warrant which had by then been obtained for a search of 3019 Emerson Avenue. The police seized two firesafes found in a bedroom closet. The firesafes contained 979 grams of cocaine, 67 grams of crack cocaine, and bundles of United States currency. The bundles had the words "Tweedy," "L Dog," "Kevin," and "$1,800" written on them. The keys to the firesafes were seized when the police inventoried the Plymouth at the impound lot. The police also seized an airline ticket from Los Angeles to Minnesota, a black gym bag, and bullets.
 
 
 10
 On October 3, 5, and 11, 1988, a magistrate[2] conducted motion hearings on defendants' motions for suppression of evidence and severance. The magistrate issued a report and recommendation, recommending that the defendants' motions be denied. On November 25, 1988, the district court[3] affirmed the magistrate's report and recommendation.
 
 
 11
 The defendants were tried by jury from November 28 through December 7, 1988. The jury convicted the defendants on all counts as charged. On January 9, 1989, all defendants were sentenced.
 
 
 12
 Prior to sentencing, the defendants filed a Motion to Preclude Application of the Sentencing Guidelines, arguing that the Guidelines were unconstitutional. The trial court granted those motions and sentenced the defendants as though the crimes had been committed prior to November 1, 1987. The government cross-appealed the defendants' sentences.
 
 II. DISCUSSION
 A. VALIDITY OF SEARCH WARRANT
 
 13
 Defendant Hubbard-Thomas challenges the district court's adoption of the magistrate's recommendation that the search warrant for 2709 Twelfth Avenue was valid. As indicated, on August 18, 1988, Adkins told the Minneapolis Police Department Narcotics Squad about drug activity at 2709 Twelfth Avenue. Hubbard-Thomas contends that the officer applying for the search warrant knew, or should have known, that the information provided to him by Adkins was false or unreliable.
 
 
 14
 "[T]he task of a reviewing court is not to conduct a de novo determination of probable cause, but only to determine whether there is substantial evidence in the record supporting the magistrate's decision to issue the warrant." Massachusetts v. Upton, 466 U.S. 727, 728, 104 S.Ct. 2085, 2085, 80 L.Ed.2d 721 (1984) (per curiam). Accordingly, the initial judicial determination to issue a search warrant should be given substantial deference.
 
 
 15
 Adkins' information corroborated the information of two additional informants. Each of the informants were at 2709 Twelfth Avenue within seventy-two hours of the issuance of the warrant. One of the informants saw numerous individuals with weapons, and a kilogram of cocaine. A second informant saw cocaine and told police that the Los Angeles street gang, "Bloods," distributed cocaine to street dealers from 2709 Twelfth Avenue. Both informants had previously provided reliable information.
 
 
 16
 Adkins, by comparison, saw a male known as "Tweedy" (defendant Coaston) weighing cocaine. Adkins said that Tweedy cooked cocaine into crack and distributed it to street dealers. Adkins also saw a kilogram of cocaine on the premises, and told officers that Tweedy was a gang leader of the Bloods. Thus, Adkins' observations corroborated the observations of the other two informants. The executing officer relied on the informants and recited the firsthand observations of the three separate confidential informants when applying for the search warrant. Given the information provided by these three informants, the record contains substantial evidence to support the magistrate's decision to issue the warrant. See Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983) (Court established test based upon "totality-of-the-circumstances" set forth in affidavit to determine whether probable cause exists for warrant to be valid). Based upon the totality of the circumstances, probable cause existed and the warrant was valid. Accordingly, we find no error in the district court's determination that the search warrant for 2709 Twelfth Avenue was legal.
 
 B. PROBABLE CAUSE FOR ARREST
 
 17
 Defendant Reed contends that there was no basis for his arrest. Reed was in the house at 2709 Twelfth Avenue when the search warrant was executed. The police arrested Reed, Colvin, Coaston, and Hubbard-Thomas, and videotaped them. Two informants subsequently identified Reed from the videotape. Reed argues that the mere fact that he was in a house where illegal activity had taken place does not give rise to probable cause to search and seize him. Furthermore, Reed asserts that the videotape taken of him and the other defendants should have been suppressed as the fruit of an illegal arrest.
 
 
 18
 The trial court found probable cause for Reed's warrantless arrest. An appellate court reviews the trial court's finding of probable cause to make a warrantless arrest under the clearly erroneous standard. See United States v. Wajda, 810 F.2d 754, 758 (8th Cir.), cert. denied, 481 U.S. 1040, 107 S.Ct. 1981, 95 L.Ed.2d 821 (1987).
 
 
 19
 This circuit has defined probable cause as follows:
 
 
 20
 Probable cause exists to make a warrantless arrest when, at the moment of the arrest, the collective knowledge of the officers involved, United States v. Briley, 726 F.2d 1301, 1305 (8th Cir.1984), was "sufficient to warrant a prudent man in believing that the [defendant] had committed or was committing an offense." Beck v. Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964).
 
 
 21
 Wajda, 810 F.2d at 758.
 
 
 22
 Minneapolis police officers forcibly entered the residence at 2709 Twelfth Avenue pursuant to the search warrant. The officers recovered a plastic baggie containing 10 grams of crack cocaine from the front porch; ammunition, firesafe keys, and a plastic baggie containing 10.8 grams of cocaine powder from the dining room; pump and bolt action shotguns, and a sawed-off shotgun from underneath the couch in the living room; glass bottles with suspected cocaine residue and a triple beam scale from the basement; test tubes with suspected cocaine residue and .32 caliber ammunition from the kitchen; and ammunition from the sunroom. The police also seized $835 which was in Reed's clothing.
 
 
 23
 At the time of Reed's arrest, the seizure of the cocaine and the weapons was sufficient for the police officers to believe that Reed had committed or was committing an offense. Also, large amounts of cash frequently are associated with illegal drug sales. See id. at 762. Informant Adkins testified that he had seen cocaine cooked into crack at 2709 Twelfth Avenue by defendants Reed, Hubbard-Thomas, and Coaston. Accordingly, we find no error in the district court's determination that there was probable cause for Reed's warrantless arrest.
 
 
 24
 Reed also asserts that the videotape, and the identification of Reed from the tape by the informants, were fruits of his illegal arrest and should have been suppressed. A videotape is similar to a mug shot taken of an arrested person and can be used in a similar fashion. Reed disputes this proposition and argues that the videotape constitutes evidence improperly obtained in an examination of his person. Even if we were to accept Reed's argument, which we, in fact, reject, the evidence was rightly gathered and employed. Where sufficient probable cause to sustain the arrest has been established, and where the "evidence seized in a contemporaneous search of the suspect's person was in no way necessary to establish probable cause, the search is incidental to the arrest ... [and] valid." United States v. Skinner, 412 F.2d 98, 103 (8th Cir.), cert. denied, 396 U.S. 967, 90 S.Ct. 448, 24 L.Ed.2d 433 (1969). Thus, the district court did not err in failing to suppress the videotape and the informants' identification of Reed.
 
 C. VALIDITY OF VEHICLE STOP
 
 25
 Defendants Houston and Jones argue that their seizure while driving the automobile was illegal and that the discovery of cocaine in the vehicle should have been suppressed. The defendants assert that the issuance of a search warrant for the 3019 Emerson Avenue duplex did not provide justification for their seizure. The defendants also argue that their seizure in the Plymouth was an arrest which required probable cause.
 
 
 26
 In United States v. Lewis, 738 F.2d 916, 920 (8th Cir.1984), cert. denied, 470 U.S. 1006, 105 S.Ct. 1362, 84 L.Ed.2d 383 (1985), this court stated that if the facts and the law support the district court's finding, it must be affirmed unless clearly erroneous. In this case, the district court and the magistrate found that the police had a specific, articulable basis to suspect that the Plymouth's occupants were engaged in criminal conduct. See Terry v. Ohio, 392 U.S. 1, 21, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968). The police "may stop a moving vehicle, 'to investigate a reasonable suspicion, based on specific and articulable facts, that its occupants are or have been involved in criminal activity.' " United States v. Eisenberg, 807 F.2d 1446, 1450 (8th Cir.1986) (quoting United States v. Doffin, 791 F.2d 118, 120 (8th Cir.1986) (per curiam)). Furthermore, when the police approach an automobile with weapons drawn, the stop is not transformed per se into an arrest. See id. at 1451.
 
 
 27
 We do not find it necessary to determine whether a Terry stop was justifiable in this case. Rather, we find that there was probable cause for the arrest of Houston and Jones. At the moment of arrest, the collective knowledge of the officers involved was sufficient for them to believe that the defendants had committed or were committing an offense. See Wajda, 810 F.2d at 758.
 
 
 28
 On August 18, 1988, Sergeant Murphy observed a black male wearing a distinctive, red-and-black checkered shirt inside the downstairs unit at 3019 Emerson Avenue. As noted, the man was later identified as defendant Houston. Houston walked away from the duplex and returned in a Plymouth. Houston later drove away with defendant Jones and a Pampers box that was large enough to hold drugs and weapons. At the time the Plymouth was stopped, the search warrant for 3019 Emerson Avenue had been issued. The police knew of the shotguns, the ammunition, and the cocaine seized at the 2709 Twelfth Avenue location. Informant Adkins had told the police about drug activity at both locations. The officers reasonably could have believed that the defendants were carrying weapons. The police, therefore, could forcibly stop the defendants. See Adams v. Williams, 407 U.S. 143, 147, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972). Accordingly, the seizure of the defendants was justified because there was probable cause for their arrest. The district court did not err in failing to suppress the cocaine found in the vehicle.
 
 D. SEVERANCE
 
 29
 Defendants Coaston and Hubbard-Thomas assert that the district court erred in denying their motions for separate trials.[4] The defendants argue that their trial should have been severed because the jury would not be able to distinguish the alleged acts of each defendant from the acts of their co-defendants. Coaston and Hubbard-Thomas also allege that they were prejudiced by evidence introduced at trial with regard to a gun belonging to co-defendant Jones and to the gang associations of co-defendant Colvin.
 
 
 30
 "To establish abuse of discretion in the denial of a motion to sever, defendants must demonstrate they were prejudiced by the jury's inability to follow the trial court's instructions and to 'compartmentalize the evidence' as it related to the separate defendants." United States v. Lee, 886 F.2d 998, 1002 (8th Cir.1989) (quoting United States v. Adkins, 842 F.2d 210, 212 (8th Cir.1988)). In this case, the initial joinder of the defendants was proper pursuant to Federal Rule of Criminal Procedure 8(b)[5] because the indictment charged all of the defendants with participation in a single conspiracy and charged several of the defendants with various substantive counts arising from the same conspiracy. See United States v. Weinrich, 586 F.2d 481, 495 (5th Cir.1978), cert. denied, 441 U.S. 927, 99 S.Ct. 2041, 60 L.Ed.2d 402 (1979). The defendants have not carried their burden of showing real prejudice. Coaston and Hubbard-Thomas have not demonstrated that the jury was unable to compartmentalize the evidence against each of them.
 
 
 31
 The defendants were arrested at 2709 Twelfth Avenue, Hubbard-Thomas's home and the location at which Coaston was staying. The police seized shotguns, powdered cocaine, test tubes, and vials at 2709 Twelfth Avenue. Adkins testified that he saw Hubbard-Thomas and Coaston cook cocaine into crack at this location. Thus, the evidence of the weapons and the cocaine that was seized related directly to Hubbard-Thomas and Coaston.
 
 
 32
 Pursuant to the allegation of prejudice resulting from a co-defendant's gang associations, the trial judge made a concerted effort to keep any reference to the Bloods gang out of the trial. The defendants were not prevented from raising any defenses as a result of the joinder. The jury convicted the defendants on the different counts on which they were charged. Accordingly, we find no error in the district court's denial of the severance motions.
 
 E. SEATING CHART
 
 33
 At the beginning of the trial, the trial judge gave the jury a seating chart identifying the fourteen people sitting at the three counsel tables. Subsequent to the confusing testimony of the first trial witness who referred to the defendants by their nicknames, the court gave the jury a second chart. This chart listed the nicknames of each defendant.
 
 
 34
 Defendant Coaston argued that the chart was prejudicial because it might appear to the jury to be a factual finding. Coaston argued that he was not known as "Tweedy." Thus, the chart listing him as "Tweedy" significantly prejudiced Coaston's right to a fair trial.
 
 
 35
 In United States v. Lueth, 807 F.2d 719, 731 (8th Cir.1986), this court commended the district court for aiding the jury in sorting through the numerous defendants and charges. The district court had ordered a large chart to be placed on the wall in front of the jury. The chart identified the defendants and the counts of the indictment. As defendants pleaded guilty or as counts were dismissed, the chart was modified to reflect these changes. The district court cautioned the jury to consider the chart only with respect to the government's charges against the defendants.
 
 
 36
 In this case, the district court instructed the jury that the nicknames on the chart were not necessarily the nicknames of the defendants. See Trial Transcript, vol. II, at 141-42.[6] The chart aided the jury in sorting through the numerous defendants and their nicknames. Accordingly, the district court properly employed the chart and Coaston was not so prejudiced by its use as to warrant a reversal of his conviction.
 
 F. ADMISSION OF HANDGUN EVIDENCE
 
 37
 Sharitana Haynie lived in the downstairs unit at 3019 Emerson Avenue. Haynie testified that she was dating defendant Jones. Jones asked to put something in Haynie's closet and she allowed him to do so. However, Haynie testified that she did not know what Jones put in the closet. Haynie said that Jones brought a gun into her home, and that she first discovered the gun on the floor next to her son.
 
 
 38
 Jones argues that the admission of Haynie's testimony that Jones had a gun at her house and that her young son discovered it, was irrelevant and prejudicial. Jones asserts that the government failed to show a connection between the handgun and the need to protect drugs. Furthermore, Jones argues that he cannot be liable for possessing the gun because the gun was never found.
 
 
 39
 In United States v. Milham, 590 F.2d 717, 721 & n. 7 (8th Cir.1979), this court held that firearms evidence is admissible in drug cases as proof of a need to protect drugs and money and, inferentially, as proof of an intent to distribute drugs. Also, evidence of a defendant's gun is probative of his involvement with the drug trade. See United States v. Matra, 841 F.2d 837, 841 (8th Cir.1988) (intent to distribute cocaine may be inferred from presence of firearms). The trial court properly admitted the handgun evidence as relevant to the drug charges.
 
 
 40
 We also find that the trial court did not abuse its discretion. Haynie's testimony and the circumstantial evidence was enough to sustain Jones' conviction. See United States v. Holm, 836 F.2d 1119, 1122 (8th Cir.1988). Accordingly, the absence of the gun is not enough to find that the court abused its discretion in admitting the evidence surrounding the gun.
 
 G. ADMISSION OF COCAINE EVIDENCE
 
 41
 Defendant Jones objected to the admission of cocaine seized from the Plymouth and from the firesafes. Jones argues that the government failed to authenticate the exhibits under Federal Rule of Evidence 901(a)[7] as the same substances seized from the Plymouth and the firesafes. Jones asserts that the problem with the chain of custody was that the cocaine was transferred from the original containers to different containers at the drug laboratory. No one, he argues, established a connection between the drugs offered at trial in their new containers and the drugs in the containers that the police had seized.
 
 
 42
 A trial court's determination of the admissibility of evidence should not be overturned unless it was a clear abuse of discretion. See United States v. Jones, 687 F.2d 1265, 1267 (8th Cir.1982). In this case, a police officer delivered the exhibits and watched as they were transferred to their new containers. The officer's handwriting appeared on the packaging of the exhibits. Furthermore, one witness was called to testify that he accepted the exhibits in the laboratory, he removed and transferred the cocaine from the original to the trial containers, and he weighed and marked the exhibits.
 
 
 43
 "So long as the court is persuaded that as a matter of normal likelihood the evidence has been adequately safeguarded, the jury should be permitted to consider and assess it in light of the surrounding circumstances." Id. at 1267 (quoting United States v. Lane, 591 F.2d 961, 962 (D.C.Cir.1979)). Accordingly, we find that the district court did not abuse its discretion in admitting into evidence the cocaine found in the Plymouth and in the firesafes.
 
 H. SUFFICIENCY OF THE EVIDENCE
 
 44
 Defendant Reed asserts that the only connection between him and the conspiracy was his purported borrowing of a car that was later used to transport drugs. Defendant Colvin argues that the government's confidential informants, Adkins and William Mathews, who testified against Colvin, were not credible. Defendant Hubbard-Thomas also argues that the only evidence which was produced against her came from Adkins, who was unreliable. Defendant Coaston asserts that the ten grams of cocaine found during the execution of the search warrant was insufficient to infer that Coaston had the specific intent to distribute the cocaine as required for a conviction.
 
 
 45
 In evaluating the sufficiency of the evidence to support a conviction, this court must view the evidence in the light most favorable to the government. Also, the court must give the government the benefit of all reasonable inferences, and reverse only if a reasonable jury could not have found guilt beyond a reasonable doubt. See United States v. Wagner, 884 F.2d 1090, 1096 (8th Cir.1989); United States v. Felix, 867 F.2d 1068, 1071 (8th Cir.1989). We hold that the evidence adduced at trial, viewed in the light most favorable to the government, was sufficient to sustain the convictions of the defendants. The credibility of the witnesses is a determination for the finder of fact, and thus, the jury's verdict must be upheld.
 
 I. TRIAL IRREGULARITIES
 
 46
 Defendant Reed also argues that he was denied a presumption of innocence and a fair trial because of three instances of trial irregularity. First, one juror observed the six defendants being led into the courthouse by the United States Marshals. Second, several jurors overheard a stranger's comments on the elevator that he hoped the jurors would "get them," apparently referring to the defendants. Third, the government witness, Haynie, was sitting outside the courtroom talking to a friend during a noon recess. Reed's attorney asserts that several jurors were present and could have overheard several sentences of Haynie's conversation.
 
 
 47
 The trial judge conducted in camera hearings for the first two instances. The judge decided to leave the juror on the panel following the first incident. The trial judge inquired whether the juror had noticed any restraint of the defendants being led into the courthouse. The juror replied that he had not. The juror also stated that he had not observed anything that would affect his ability to be fair and impartial. Reed's attorney did not object to the trial judge's decision to leave the juror on the panel.
 
 
 48
 The trial judge replaced three jurors following the elevator incident. Reed asserts that there were four jurors in the elevator who had overheard the comment that the jury should "get them." The three excused jurors admitted that they were in the elevator. All of the other jurors denied overhearing any comment regarding the case.
 
 
 49
 Pursuant to a hearing held in chambers for the third incident, the judge decided not to declare a mistrial or poll the jury. There is no evidence that Haynie communicated or commented to any of the jurors. Thus, we find that the trial judge did not abuse his discretion.
 
 J. SENTENCING GUIDELINES
 
 50
 Each of the defendants brought a Motion to Preclude Application of the Sentencing Guidelines and to have the Sentencing Guidelines declared unconstitutional. The trial court granted the motion, and on January 9, 1989, sentenced the defendants as though the crimes had been committed prior to November 1, 1987. Shortly after the sentencing, the Supreme Court decided Mistretta v. United States, --- U.S. ----, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989), upholding the constitutionality of the Sentencing Guidelines. Pursuant to the Mistretta decision, the government appealed the sentences.
 
 
 51
 In this case, the issue on appeal is whether the government properly responded to the Motion to Preclude Application of the Sentencing Guidelines and sufficiently objected to the defendants' subsequent sentences outside of the Guidelines. We find that the government did not register an objection to the motion to have the Sentencing Guidelines declared unconstitutional. Nor did the government make an objection at the sentencing proceedings. The government alleges that it did oppose the motion to have the Guidelines declared unconstitutional but that for some unknown reason such opposition is not clearly stated in the record. We are not persuaded by this claim.
 
 
 52
 The government did present the district court with calculations of what the defendants' sentences would have been under the Guidelines. The government asked the court to sentence accordingly. This reference to the Guidelines does not rise to the level of a proper objection. The government was present for the full discussion and the granting of the defendants' motion. Then, the government requested that sentencing should proceed for each defendant. The government could have articulated a clear objection at any point during these proceedings and preserved this argument for appeal. The government did not do so, and thus, arguments raised for the first time on appeal shall not be considered. See United States v. Russell, 585 F.2d 368, 371 (8th Cir.1978); United States v. Librach, 536 F.2d 1228, 1231 (8th Cir.), cert. denied, 429 U.S. 939, 97 S.Ct. 354, 50 L.Ed.2d 308 (1976).
 
 III. CONCLUSION
 
 53
 For the reasons given, we affirm the district court in all respects.
 
 
 
 [1]
 The defendants were sentenced for the following offenses:
 Robert Lee Houston was sentenced to 10 years for conspiracy to manufacture and distribute more than 50 grams of crack cocaine in violation of 21 U.S.C. § 846 (1982); five years without parole for possession with intent to distribute five grams of cocaine in violation of 21 U.S.C. §§ 841(a)(1) (1982), 841(b)(1)(B)(iii) (Supp. V 1987), and 18 U.S.C. § 2 (1982); five years for possession with intent to distribute 254 grams of cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C) (Supp. V 1987), and 18 U.S.C. § 2; five years without parole for possession of 979 grams of cocaine with intent to manufacture cocaine base in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(ii)(II) (Supp. V 1987), and 18 U.S.C. § 2; and 10 years without parole for aiding and abetting the possession with intent to distribute 63 grams of cocaine base in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(iii) (Supp. V 1987), and 18 U.S.C. § 2. The sentences are to run concurrently.
 Leonard H. Coaston was sentenced to 20 years for conspiracy to manufacture and distribute more than 50 grams of crack cocaine in violation of 21 U.S.C. § 846; five years without parole for knowingly and intentionally possessing with intent to distribute 10 grams of cocaine base (crack) in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii); five years for aiding and abetting the possession of 10 grams of cocaine with intent to manufacture cocaine base in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 18 U.S.C. § 2; five years without parole for possession of 979 grams of cocaine with intent to manufacture cocaine base in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(ii)(II), and 18 U.S.C. § 2; and 20 years without parole for aiding and abetting the possession with intent to distribute 63 grams of cocaine base in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(iii), and 18 U.S.C. § 2. The sentences are to run concurrently.
 Maurice L. Reed was sentenced to 15 years for conspiracy to manufacture and distribute more than 50 grams of crack cocaine in violation of 21 U.S.C. § 846; and 15 years for aiding and abetting the possession of 10 grams of cocaine with intent to manufacture cocaine base in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 18 U.S.C. § 2. The sentences are to run concurrently.
 Donna L. Hubbard-Thomas was sentenced to 12 years for conspiracy to manufacture and distribute more than 50 grams of crack cocaine in violation of 21 U.S.C. § 846; and 12 years for aiding and abetting the possession of 10 grams of cocaine with intent to manufacture cocaine base in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 18 U.S.C. § 2. The sentences are to run concurrently.
 Kevin Lee Colvin was sentenced to 15 years for conspiracy to manufacture and distribute more than 50 grams of crack cocaine in violation of 21 U.S.C. § 846; five years for aiding and abetting the possession of 10 grams of cocaine with intent to manufacture cocaine base in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 18 U.S.C. § 2; five years without parole for possession of 979 grams of cocaine with intent to manufacture cocaine base in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(ii)(II), and 18 U.S.C. § 2; and 15 years without parole for aiding and abetting the possession with intent to distribute 63 grams of cocaine base in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(iii), and 18 U.S.C. § 2. The sentences are to run concurrently.
 John Michael Jones was sentenced to 15 years for conspiracy to manufacture and distribute more than 50 grams of crack cocaine in violation of 21 U.S.C. § 846; five years without parole for possession with intent to distribute five grams of cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(iii), and 18 U.S.C. § 2; five years for possession with intent to distribute 254 grams of cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 18 U.S.C. § 2; five years without parole for possession of 979 grams of cocaine with intent to manufacture cocaine base in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(ii)(II), and 18 U.S.C. § 2; and 15 years without parole for aiding and abetting the possession with intent to distribute 63 grams of cocaine base in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(iii), and 18 U.S.C. § 2. The sentences are to run concurrently.
 
 
 [2]
 The Honorable Janice M. Symchych, United States Magistrate for the District of Minnesota
 
 
 [3]
 The Honorable Harry H. MacLaughlin, United States District Judge for the District of Minnesota
 
 
 [4]
 Fed.R.Crim.P. 14 provides in pertinent part:
 If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires.
 
 
 [5]
 Fed.R.Crim.P. 8(b) provides:
 (b) Joinder of Defendants. Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count.
 
 
 [6]
 The court gave the following instruction:
 Members of the jury, I am going to restrict [sic] to you a revised copy of the people on the chart. Would you pass in what you've got?
 You will note the sketch of the courtroom now has the names of the attorneys where they are seated, and also adds these nicknames that have been used by this witness and that appear in the indictment.
 The fact that you have been handed a paper that includes those nicknames does not mean that those nicknames are necessarily the nicknames of any one of these Defendants. That's for you to decide if and when it becomes an appropriate time to do it.
 I am giving you this only for ease and identification, because we have a witness who has been testifying all morning referring to various Defendants by various nicknames, and he has tied those nicknames to various persons amongst the Defendants.
 Whether you believe the witness or not is up to you. I am not trying to put the imprimatur of the Court upon it. I am trying to make it easier for you to follow, so that you can look at this and see who it is in his mind that he's talking about. Okay?
 
 
 [7]
 Fed.R.Evid. 901(a) provides:
 (a) General provision. The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.