**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Kevin PRICE, Defendant–Appellant.**

No. 89–1499.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 11, 1989.

Decided Nov. 7, 1989.

Thomas M. Durkin and John N. Gallo, Asst. U.S. Attys., Office of the U.S. Atty., Chicago, Ill., for the U.S., plaintiff-appellee.

Michael G. Berland, Chicago, Ill., for Kevin Price, defendant-appellant.

Before BAUER, Chief Judge, WOOD, Jr. and FLAUM, Circuit Judges.

BAUER, Chief Judge.

Defendant Kevin Price brings this appeal from the district court's entry of final judgment on the jury verdict finding him guilty of unlawful possession of a sawed-off shotgun in violation of 26 U.S.C. § 5861(d). Price claims that his arrest was made without probable cause in violation of the fourth amendment and that the district court's refusal to ask certain voir dire questions denied him his sixth amendment right to an impartial jury and his fourteenth amendment right to due process.[1] For the reasons discussed below, we affirm Price's conviction.

I. Facts

On July 16, 1987, Agent John Gamboa of the United States Treasury Department's Bureau of Alcohol, Tobacco & Firearms (ATF) requested a search warrant for Apartment 9B, 914 North Austin Blvd., Oak Park, Illinois. According to the affidavit supporting the warrant request, Gamboa met with a confidential informant two days earlier. The informant, who had twice before provided accurate information leading to two weapons arrests, told Gamboa that he had been in Apartment 9B three times that week and had seen a black male known to him as "D. Price" (a.k.a. "Tino") walking through the apartment carrying a sawed-off shotgun. The informant described the weapon as a single barrel, single shot, break-open shotgun with both the barrel and the stock partially sawed off. The informant also told Gamboa that "D. Price" lived in the apartment with a woman named Crystal Hall and their two sons, and gave Gamboa a telephone number which checked out as being listed to Crystal Hall at that address. After his meeting with the informant, Gamboa checked with the National Firearms Registration and Transfer Records Section and determined that no firearms were registered to a "D. Price" or to a "Tino."[2] The supporting affidavit further states that the informant showed Gamboa the location of the apartment and that the mailbox outside of the apartment read "D. Price."

Based on this information, a search warrant was issued. In the early morning hours of July 17, 1987, Gamboa, other ATF officers and members of the Oak Park police executed the warrant. Upon entering the apartment, the officers saw two small children in the front room and the defendant Kevin Price and Crystal Hall in the apartment's only bedroom. Hall was getting up from the bed putting on a robe, and Price was lying on the bed covered by a

---

1. In his initial brief, Price's counsel also argued that the district court judge erred in denying his motion for mistrial based on allegedly improper statements made by the prosecutor in his closing argument. Price's counsel subsequently withdrew this claim in his reply brief.

2. 26 U.S.C. § 5861(d) makes it a crime to "receive or possess a firearm which is not registered ... in the National Firearms Registration and Transfer Record" and 26 U.S.C.

§ 5845(a)(2) defines "firearm" as, *inter alia*, "a weapon made from a shotgun if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 18 inches in length." According to Gamboa's affidavit, the informant estimated that the weapon at Price's apartment had a barrel length of 12 to 14 inches and an overall length of less than 26 inches, putting it within the purview of the registration statute.

sheet. Gamboa removed the sheet and found that Price was naked. A female ATF agent took Hall out of the bedroom, and Gamboa ordered Price to lie on the floor, where he was held at gunpoint. Gamboa asked the defendant if his name was "Price" and he responded "yes." The officers immediately searched the bedroom and found a gym bag on the floor containing several small guns. They searched further and found, between the mattress and box spring of the bed on which Price and Hall had been lying, a sawed-off shotgun matching the description given to Gamboa by the informant.

After the bedroom had been secured, the officers gave Price his clothes and allowed him to get up from the floor. Once the shotgun was found and identified, Agent Gamboa told Price he was under arrest, handcuffed him and read him his *Miranda* warnings. Gamboa testified that he did not realize that the man he arrested was Kevin Price and not "D. Price" until he was processing the defendant at the ATF office. There was conflicting testimony, however, as to exactly when the officers learned the defendant's first name: the defendant testified that he told the officers that his name was Kevin before they left the apartment, and another ATF agent testified that she saw Gamboa looking through the defendant's wallet in the apartment. In any event, Gamboa and the other agents took Price to the ATF office. At all times prior to being questioned at the ATF office, Price denied owning the weapons seized during the search. At the ATF office, however, after again being advised of his rights and signing a waiver form, Price admitted owning the sawed-off shotgun.[3]

On the strength of this evidence, the October 1987 Grand Jury returned a one-count indictment against Price for unlawful possession of an unregistered weapon in violation of 26 U.S.C. § 5861(d). After a three-day jury trial, Price was found guilty as charged on December 19, 1988. The district court entered judgment on this verdict, denied Price's post-trial motions, and

sentenced him. Price filed a timely appeal, raising the arguments discussed below.

## II. Discussion

### A. The Arrest

Price first argues that probable cause did not exist at the time of his arrest and that therefore his confession and all other evidence obtained as fruits of the arrest should have been excluded. This is essentially the argument Price raised in his unsuccessful pre-trial motion to quash and suppress. The district court held an evidentiary hearing on that motion, at which Judge Marshall found that Price's freedom was restrained when the officers entered the apartment and forced him onto the floor at gunpoint, i.e., before Agent Gamboa found the shotgun and formally arrested Price. Therefore, Judge Marshall stated, the officers' actions were justified only if probable cause to arrest existed at the time of the initial restraint. After receiving further briefing on the question, Judge Marshall ruled that "the totality of circumstances were sufficient for there to be probable cause to arrest Mr. Price at the time the officers appeared to execute the search warrant," and, in the alternative, that "in the circumstances confronting the officers, they were authorized by reason of the warrant to restrain Mr. Price for a period of time while the warrant was being executed." Transcript of Proceedings of December 7, 1988 at pp. 2–4. We agree.

In reviewing probable cause determinations, this court does not disturb the district court's underlying factual findings unless they are clearly erroneous. *United States v. Lima*, 819 F.2d 687, 688 (7th Cir.1987); *United States v. Goudy*, 792 F.2d 664, 668 (7th Cir.1986). This court's review of the probable cause determination itself is *de novo*, and we employ the following standard:

> The police have probable cause to arrest an individual where "the facts and circumstances within their knowledge and

---

3. On the witness stand, Price denied making this admission. *See* Transcript of Proceedings of December 16, 1988 at p. 230.

of which they [have] reasonabl[y] trustworthy information [are] sufficient to warrant a prudent [person] in believing that the [suspect] had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91 [85 S.Ct. 223, 225, 13 L.Ed.2d 142] (1964).... "[P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Illinois v. Gates*, 462 U.S. 213, 244 n. 13 [103 S.Ct. 2317, 2335 n. 13, 76 L.Ed.2d 527] (1983). *Lima*, 819 F.2d at 688 (additional citations omitted); *see also United States v. De Soto*, 885 F.2d 354, 367–68 (7th Cir.1989).

▮ In this case, the district court's factual findings meet this probable cause standard. An informant who had twice proven his reliability provided Agent Gamboa with specific, recent, first-hand information. Gamboa verified that information by having the informant show him the location of the apartment, checking the mailbox, and checking the telephone number. Upon entering the apartment, the officers' observations verified the information given by the informant: they found two children in the front room and a man fitting the description given by the informant and answering to the name of "Price" in the bedroom with Crystal Hall. Viewing these facts, as we are required to, in light of "the factual, practical considerations of everyday life upon which reasonable, prudent [persons], not legal technicians act," *United States v. Watson*, 587 F.2d 365, 368 (7th Cir.1978), we conclude that the officers were reasonable in believing that the defendant was committing an offense—namely the possession of an unregistered, sawed-off shotgun—when they first entered the bedroom and restrained Price's freedom. Thus, there was probable cause to arrest the defendant at that time, and the fourth amendment is satisfied. *Cf. McCray v. Illinois*, 386 U.S. 300, 304, 87 S.Ct. 1056, 1059, 18 L.Ed.2d 62 (1967) (information from a reliable informant verified by direct observation can give police probable cause to make warrantless arrest); *Draper v. United States*, 358 U.S. 307, 312–14, 79 S.Ct. 329, 332–33, 3 L.Ed.2d 327 (1959) (same).[4]

▮ Alternatively, we are persuaded, as was Judge Marshall, that the officers' detention of Price during the search was reasonable under *Michigan v. Summers*, 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981). In *Summers*, the Court held that "a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted." *Id.* at 705, 101 S.Ct. at 2595 (footnotes omitted). Here, the officers entered the apartment pursuant to a valid warrant which authorized a search for very dangerous contraband. The officers immediately detained Price and held him for several minutes while the bedroom was searched for weapons. Once the bedroom was secured, Price was permitted to get up and move about the room, and once the sawed-off shotgun was found, he was properly arrested. Such a limited detention is permissible under *Summers*.

## B. The Voir Dire

▮ Price's second challenge is that the district court committed reversible error in refusing to ask three of the defendant's twenty-eight proffered voir dire questions. The three questions, numbered one, three and four, related to the defendant's disputed admission, and read as follows:

1. The evidence in this case will indicate that two government agents from the Department of Alcohol, Tobacco and Firearms (ATF) will testify that the

---

**4.** The confusion as to the defendant's first name does not change our conclusion. In the circumstances in which they encountered the defendant, the officers reasonably believed that he was "D. Price" or "Tino." This belief was confirmed when Gamboa asked the defendant if his name was "Price" and he responded affirmatively. Under such circumstances, the officers were not required to make, as Price suggests, further inquiry before arresting him. *Cf. Hill v. California*, 401 U.S. 797, 802–05, 91 S.Ct. 1106, 1110–11, 28 L.Ed.2d 484 (1971) (warrantless arrest valid where officers reasonably mistook arrestee for other suspect about whom officers had probable cause, where arrestee matched suspect's description and was in suspect's apartment but (truthfully) informed officers that he was not the suspect).

Defendant made an oral statement admitting that he owned and possessed the gun described in the indictment, but the Defendant will deny that he ever made such a statement. As you sit there now, do you believe that it is more likely than not that the Defendant did make the oral statement attributed to him by the two government agents?

3. Does the fact that the government's evidence will be that the Defendant admitted that he did what is charged in the indictment make it more difficult for any of you to sit as fair and impartial jurors who will make their own determinations of the credibility of all witnesses?

4. Does the fact that the government's evidence will be that the Defendant allegedly admitted that he did what is charged in the indictment make it more difficult for any of you to accept that the Defendant is presumed to be innocent, even during jury deliberations, unless and until the government proves its case beyond a reasonable doubt?

The other twenty-five questions submitted by the defendant were either asked by Judge Marshall or the parties, or covered in substance by the admonitions and instructions. However, Judge Marshall refused to ask these three questions and forbade defendant's counsel from asking them, stating:

It has been my consistent position that it is not appropriate to submit to the jury part of the evidence in the case during voir dire and ask them to assess its credibility.

Jurors are instructed at the close of the case that they are to decide the case on the basis of all the evidence regardless of which side produced it, and ... I don't think it is appropriate to hypothesize what the evidence in the case is going to be.

Transcript of Proceedings of December 15, 1988 (Voir Dire Tr.) at p. 4.

Price contends that, because he was prohibited from making specific mention during the voir dire of the admission he was planning to deny, he was denied his sixth amendment right to an impartial jury and his fourteenth amendment right to due process.[5] He argues that Judge Marshall's refusal to allow mention of the admission was constitutional error because of "the serious prejudicial value inherent in such confession testimony." This argument is without merit.

Neither due process, nor the right to an impartial jury, nor sound reasoning and logic require that trial judges specifically present the venire with the most incriminating, disputed pieces of the government's case *simply because they are so incriminating*. Such a requirement would have several deleterious effects. First, it would likely result in the disqualification of most (honest) prospective jurors, as it would be difficult indeed to truthfully answer "no" to questions such as the following: "The government will introduce evidence that the defendant's fingerprints were allegedly found on the murder weapon, that he allegedly confessed to the crime, that an eyewitness allegedly identified him as the man she saw fleeing the scene, etc., but the defendant will deny all that. Does this affect your view as to the credibility of the defendant, or your ability to presume him

5. The defendant's due process argument centers on *United States v. Dellinger*, 472 F.2d 340 (7th Cir.1972), and the "essential demands of fairness" limitation on a trial judge's discretion in conducting voir dire. *See Aldridge v. United States*, 283 U.S. 308, 310, 51 S.Ct. 470, 471, 75 L.Ed. 1054 (1931). The defendant is correct in pointing out that due process and the essential demands of fairness define the outer boundary of a trial judge's discretion. However, we find it sufficiently clear that Judge Marshall's voir dire comes within this boundary that no discussion of this argument is necessary. Further, we note that *Dellinger* is inapposite. In *Dellinger*, this court held that it was reversible error for the trial judge to refuse to ask the venire about their attitudes toward and exposure to the anti-Vietnam War demonstrations and the riots surrounding the Democratic Convention of 1968, when these events, the subject matter of the trial, were obviously matters of great controversy and massive media coverage. The questions rejected by Judge Marshall in this case did not address any similar, legitimate concerns about deeply-held political attitudes or exposure to prejudicial publicity.

innocent?" Second, it would require prospective jurors to determine, before being properly presented with the evidence and observing the witnesses' demeanor, whether or not an important disputed event took place or statement was made. As Judge Marshall noted in his ruling on this issue, the opposite should take place; the jury should reserve judgement on the key disputed facts until *all* the evidence has been presented. Third, it would allow both sides to introduce, comment upon and possibly mischaracterize the evidence which is to be introduced in the course of the trial. Fourth, it would be a cumbersome intrusion on the trial judge's traditionally broad discretion in conducting voir dire. *See Rosales–Lopez v. United States,* 451 U.S. 182, 188–89, 101 S.Ct. 1629, 1634–35, 68 L.Ed.2d 22 (1981); *Ham v. South Carolina,* 409 U.S. 524, 528, 93 S.Ct. 848, 851, 35 L.Ed.2d 46 (1973); *Aldridge v. United States,* 283 U.S. 308, 310, 51 S.Ct. 470, 471, 75 L.Ed. 1054 (1931).

Although Price does not have the right to expose the venire to incriminating evidence, he does have the right to "sufficient questioning to produce, in light of the factual situation involved in the particular trial, some basis for a reasonably knowledgeable exercise of the right of challenge." *United States v. Lewin,* 467 F.2d 1132, 1137 (7th Cir.1972); *see also United States v. Kord,* 836 F.2d 368, 374 (7th Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 72, 102 L.Ed.2d 49 (1988) ("voir dire ... need only provide 'some basis for a reasonably knowledgeable exercise of the right of challenge whether for cause or peremptory' ") (quoting *United States v. Thompson,* 807 F.2d 585, 590 (7th Cir.1986)) (additional citations omitted). This standard does not change when the district court decides to solicit proposed voir dire questions from the parties. In such cases, the court is not required to ask any particular question(s) suggested, *United States v. Verkuilen,* 690 F.2d 648, 660 (7th Cir.1982), and refusal to submit specific questions to the venire is not reversible error if

> in substance the [requesting party] received the information specifically requested and review of the voir dire reveals that the court made sufficient inquiry as to the background and attitudes of the jurors to enable the litigants, not only to challenge for cause, but to exercise their peremptory challenges.

*United States v. Banks,* 687 F.2d 967, 974 (7th Cir.1982) (citing *United States v. Esquer,* 459 F.2d 431, 432 (7th Cir.1972)) (quotation omitted).[6]

Here, the voir dire conducted by Judge Marshall was detailed and thorough. He began by admonishing the venire at length concerning the presumption of innocence

---

**6.** The defendant argues that this court should depart from these standards and adopt the view that the failure to ask a particular question proposed by a defendant violates the defendant's sixth and fourteenth amendment rights if the "anticipated answer" to the question "might form the basis for a challenge for cause." The defendant cites as support for this argument *United States v. Blount,* 479 F.2d 650 (6th Cir. 1973). We decline to handcuff district court judges with such a narrow test.

First, we note that the defendant has again cited an inapposite case. In *Blount,* the trial judge refused to ask defendant's proposed questions as to whether the prospective jurors could accept the valid, general propositions of law that a defendant is presumed innocent and has no burden to prove his innocence, and the Sixth Circuit held that refusal to be reversible error. In the instant case, the rejected questions did not solely refer to such valid, general propositions of law, but were aimed at exposing the prospective jurors to a disputed piece of the government's case and measuring their reaction to it, and were rejected for that reason. Second, we note that other courts have refused to follow even the more limited holding of *Blount* that trial judges must ask specific questions proposed by counsel concerning the ability to accept propositions of law. *See United States v. Price,* 577 F.2d 1356, 1366 (9th Cir.1978); *United States v. Ledee,* 549 F.2d 990, 992 n. 3 (5th Cir.1977); *United States v. Wooton,* 518 F.2d 943, 947 n. 7 (3d Cir.1975); *United States v. Miller,* 758 F.2d 570, 573 (11th Cir.1958). These cases further weaken the defendant's attempt to use *Blount* as support for his suggested general rule that a trial judge commits reversible, constitutional error by not asking a particular question the answer to which might form the basis for a for-cause challenge. Our task on review will continue to be to determine whether, considering the voir dire *as a whole,* the district court judge has abused his broad discretion by unduly limiting the voir dire in a way that violates due process or the defendant's right to be tried by a fair and impartial jury.

and the government's burden of proof. Voir Dire Tr. at 13–14. He then informed the jurors that they were to be asked about their views of guns and stressed to them the importance of honestly providing this information to which both parties were entitled. Voir Dire Tr. at 15–16. Later, he asked individual prospective jurors whether they were affiliated with any group which takes positions on firearms and whether they had undergone personal experiences with firearms that might affect their ability to be fair jurors. Voir Dire Tr. at 47–50, 52–53, 56, 58. He also instructed the venire at great length that every witness was to be treated equally as he or she took the stand, that judgment should be withheld until all evidence was in, and that they should not go into the case assuming that the government agents and police officers were going to tell the truth. Voir Dire Tr. at 26–27. Judge Marshall concluded his questioning by asking the panel if, after what they then knew about the case, any of them had any doubt about their ability to be fair jurors, and then tendered the panel to counsel for additional questioning. Voir Dire Tr. at 62.

The first question asked by the prosecutor was whether the fact that a witness was a law enforcement agent would make anyone tend to believe or disbelieve him. Voir Dire Tr. at 62–63. Defense counsel also asked multiple questions concerning the ability of the jurors to evaluate the credibility of the witnesses when the testimony of government witnesses conflicts with defense witnesses, to follow the presumption of innocence, and to hold the government to its burden of proof. Voir Dire Tr. at 68–70. In sum, then, Judge Marshall both expounded upon and allowed repeated questioning on the valid topics contained in defendant's proposed questions one, three and four: the presumption of innocence, the government's burden of proof, and the relative credibility of the witnesses. Thus, his refusal to submit defendant's specific questions was not reversible error. Further, we find that the voir dire as a whole was well designed to uncover bias in the prospective jurors and adequately permitted the reasonably knowledgeable exercise of challenges.

### III. Conclusion

For the reasons discussed above, the district court's entry of final judgement and the jury's conviction of the defendant are AFFIRMED.