**Raymond T. MAHLBERG, Plaintiff–Appellant,**

v.

**Edward J. MENTZER, Individually and in his Official Capacity, Defendant–Appellee.**

No. 91–1981.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 12, 1991.

Decided July 10, 1992.

Rehearing and Rehearing En Banc Denied Aug. 14, 1992.

Thom K. Cope, Lincoln, Neb., argued, for appellant.

John C. Wiltse, Lincoln, Neb., argued (John C. Wiltse and David R. Buntain, on the brief), for appellee.

Before BEAM, Circuit Judge, HEANEY, Senior Circuit Judge, and LOKEN, Circuit Judge.

LOKEN, Circuit Judge.

Raymond Mahlberg appeals the judgment of the district court[1] entered after a jury rejected his § 1983 claims that Edward Mentzer, a University of Nebraska–Lincoln (UNL) police officer, violated Mahlberg's Fourth Amendment rights in arresting Mahlberg and searching his home. Mahlberg contends that he is entitled to a new trial because the district court misconstrued *Payton v. New York*, 445 U.S. 573,

---

**1.** The HONORABLE DAVID L. PIESTER, United States Magistrate Judge for the District of Ne- braska, who tried this case by consent of the parties pursuant to 28 U.S.C. § 636(c).

100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), because the jury verdict is against the weight of the evidence supporting his claim of an illegal search, and because the district court erred in excluding a prior state court suppression order. We affirm.

## I.

On May 12, 1987, Mahlberg resigned his position as a UNL security guard, effective May 31. On May 18, Mahlberg was suspected of having feigned a break-in at the UNL Love Library; his resignation was accelerated to May 19, and he was given severance pay for the rest of the month. On May 26, computer hardware and software began disappearing from the UNL College of Engineering. Dr. Goddard, a College of Engineering employee, told Mentzer, who was investigating both incidents, that Mahlberg had made an unauthorized copy of a program called Autocad. Mentzer contacted Autodesk Company, which published Autocad, and was told that any such copying would constitute theft.

Based upon an affidavit by Mentzer, the Lancaster County Attorney then obtained a warrant to search Mahlberg's home. The warrant listed two Autocad programs by serial number as the objects of the search. On July 1, Mentzer and another officer executed the search warrant. At the start of what became a three-hour search, Mahlberg's wife directed the officers to the basement where Mahlberg kept his extensive computer equipment, and they began looking for copies of the Autocad programs.

Mahlberg returned home during the search, and Mentzer explained what the officers were looking for. After an hour of inconclusive searching, Mahlberg led the officers to a box under the stairs containing numerous computer disks, some of which were labeled "Autocad." Mahlberg said, "I think what we are looking for is in here." Mentzer seized the box and continued searching, eventually seizing approximately 160 computer disks; a number of instruction manuals; a three-ring "Horizon Seed" binder containing a printout of a

computer directory listing Autocad; a "Lotus 1–2–3" program and manual found in a box addressed to "University of Nebraska–Lincoln Metals Lab" at Mahlberg's home address; and two library books marked "Property of the University of Nebraska Love Library." Mentzer gave Mahlberg a receipt for the seized items.

Before leaving the home, Mentzer placed Mahlberg under arrest. Mahlberg was later charged with two counts of felony theft of services in violation of Neb.Rev.Stat. § 28–515, but the charges were dismissed when the state court granted his motion to suppress the fruits of Mentzer's search.

Mahlberg then commenced this action against Mentzer and the University of Nebraska Board of Regents, alleging unlawful arrest, a search that exceeded the bounds of the search warrant, and invasion of privacy in violation of § 1983 and Nebraska law.[2] Prior to the jury trial, the district court granted Mentzer's motion in limine regarding Mahlberg's successful motion to suppress in the criminal case. The jury found in favor of Mentzer on all claims, and the district court denied Mahlberg's motion for a new trial. This appeal followed.

## II.

■ Mahlberg argues first that his arrest was illegal as a matter of law under *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), because Mentzer had neither an arrest warrant nor exigent circumstances to justify arresting Mahlberg in his home. This argument presents a narrow Fourth Amendment issue—if a police officer discovers probable cause to arrest while executing a lawful warrant to search the suspect's home, may the suspect be immediately arrested, or must the officer first obtain a separate arrest warrant?

In *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), the Supreme Court held that, absent exigent circumstances, an officer must obtain an

**2.** Mahlberg voluntarily dismissed the Regents

and dropped his state law claim prior to trial.

arrest warrant before entering a suspect's home to make an arrest. Here, Mentzer lawfully entered Mahlberg's home to execute the search warrant and discovered probable cause to make the arrest during the ensuing search.[3] Mahlberg argues that *Payton* nevertheless required an arrest warrant because the search warrant did not adequately protect his *personal* privacy interests.

Mahlberg reads *Payton* too broadly. "Physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." 445 U.S. at 585, 100 S.Ct. at 1379. Therefore, "an entry to arrest and an entry to search for and to seize property implicate the same interest in preserving the privacy and sanctity of the home, and justify the same level of constitutional protection." *Id.* at 588, 100 S.Ct. at 1381. The officers were lawfully in Mahlberg's home to search. Mahlberg was present during the search, so his arrest did not extend the scope or duration of the search in any way. With the evidence this search produced, Mentzer could have arrested Mahlberg without a warrant outside of his home. We see no Fourth Amendment distinction between the authority to seize items in plain view incident to a lawful search and the authority to arrest a suspect in his home when the lawful search uncovers probable cause that the suspect has committed a crime. *See Arizona v. Hicks*, 480 U.S. 321, 326–27, 107 S.Ct. 1149, 1153, 94 L.Ed.2d 347 (1987). Indeed, the opposite conclusion would lead to absurd results. Under Mahlberg's standard, if police officers executing a search warrant discovered the homeowner and twenty other people packaging drugs, they could seize the drugs and arrest the twenty visitors but would need an arrest warrant before they could arrest the homeowner. The

Fourth Amendment is concerned with reasonableness, not with meaningless formalisms.

Mahlberg cites no case adopting his interpretation of *Payton*. The only circuit to expressly address this *Payton* issue held that no arrest warrant is needed "while officers were legally on the premises pursuant to a search warrant." *Jones v. City of Denver*, 854 F.2d 1206, 1209 (10th Cir. 1988). *United States v. Houston*, 892 F.2d 696, 701–02 (8th Cir.1989), and *United States v. Price*, 888 F.2d 1206, 1208–09 (7th Cir.1989), are consistent with *Jones*, although they do not discuss this issue. We agree with the analysis in *Jones*. Mahlberg was properly denied a new trial on his claim of unlawful arrest.

### III.

Mahlberg next contends that the district court erred in denying a new trial because the great weight of the evidence supported the claim that his Fourth Amendment rights were violated when Mentzer seized items not listed on the search warrant. We review the denial of a motion for new trial solely for abuse of discretion. *See McDonough Power Equipment v. Greenwood*, 464 U.S. 548, 556, 104 S.Ct. 845, 850, 78 L.Ed.2d 663 (1984).

Given the substantial burden a verdict loser must meet to warrant a new trial on this ground, *see White v. Pence*, 961 F.2d 776, 781–82 (8th Cir.1992), this issue requires little discussion. Mentzer testified that he did not know which disks contained the Autocad programs,[4] and that Dr. Goddard had warned him that Mahlberg might "booby-trap" the programs to erase themselves if examined on Mahlberg's home computer. Therefore, he decided to

---

**3.** At oral argument, counsel for Mahlberg suggested that Mentzer lacked probable cause to arrest because he could not be sure, without viewing the disks seized in the search, that Mahlberg had in fact stolen Autocad programs. However, the record on appeal does not establish that Mahlberg properly raised and preserved this issue in the district court. In addition, given what he had learned from Dr. Goddard and Autodesk Company, Mentzer plainly had probable cause when Mahlberg handed

over disks marked Autocad and said, "I think what we are looking for is in here."

**4.** Mahlberg did not clearly explain which disks contained the Autocad programs, and in any event Mentzer was not required to accept what Mahlberg told him. *See United States v. Hughes*, 940 F.2d 1125, 1127 (8th Cir.), *cert. denied*, — U.S. —, 112 S.Ct. 267, 116 L.Ed.2d 220 (1991).

seize all the disks for later review away from Mahlberg's house. This evidence supported the jury verdict that all computer disks were lawfully seized. *See United States v. Blakeney*, 942 F.2d 1001, 1028 n. 13 (6th Cir.1991), *cert. denied*, — U.S. —, 112 S.Ct. 881, 116 L.Ed.2d 785 (1992). Likewise, Mentzer's testimony that he had reason to believe the computer manuals, library books, and other items seized were connected to criminal activity supported the seizure of these items. *See Horton v. California*, 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990); *United States v. Garner*, 907 F.2d 60, 62 (8th Cir.1990), *cert. denied*, — U.S. —, 111 S.Ct. 787, 112 L.Ed.2d 849 (1991). Thus, if the jury believed Mentzer's testimony, they were entitled to find in his favor on this claim, and Mahlberg's motion for a new trial was properly denied.

## IV.

■ Prior to trial, Mentzer filed a motion in limine "for an order preventing the plaintiff from disclosing any facts in relation to the filing of a motion to suppress or ruling thereon in *State v. Raymond T. Mahlberg.*" Mentzer argued that such evidence would be irrelevant and prejudicial; Mahlberg responded that it was admissible under the Nebraska law of collateral estoppel.[5] The district court ruled:

> On the record presently before the court, there is no indication as to what issues were actually litigated on the motion to suppress before the [state] court; there is no showing as to why the motion was sustained; and there is no indication that the parties' interests in the two proceedings are sufficiently the same as to conclude that privity exists. I believe that the matters raised by this motion in limine are of sufficient import as to require further development of the law and the facts surrounding the state court proceedings.

A motion in limine addresses not the ultimate ruling on the admissibility of the proffered evidence but rather is only a directive to counsel as to whether that evidence may be referred to at the time of voir dire and/or opening statements by counsel. For the reasons set forth above I shall exclude all references to the state court motion to suppress and the ruling thereon during jury selection and opening statements by counsel.

The record on appeal contains nothing else regarding this issue. We are told that the district court later excluded evidence of the state court's suppression order at trial, but neither that ruling nor the specific offer of evidence to which it responded is part of the record on appeal. We are also told that the state court never issued a suppression order but did note the grant of Mahlberg's motion to suppress on its docket sheet; however, that docket sheet is not part of the record on appeal.

On this record, the only issue preserved on appeal is whether the district court erred in the above-quoted pre-trial ruling on Mentzer's motion in limine. There is clearly no basis in the record for reversing that preliminary, discretionary ruling. The district court ruled that it had not been given sufficient facts to apply collateral estoppel under Nebraska law and encouraged Mahlberg to make a better record at trial. A party seeking to invoke collateral estoppel under Nebraska law has the burden of meeting four fact-intensive criteria. *See State on Behalf of J.R. v. Mendoza*, 240 Neb. 149, 481 N.W.2d 165, 169 (1992); *State v. Gerdes*, 233 Neb. 528, 446 N.W.2d 224, 227–28 (1989). Here, we do not know what facts Mahlberg submitted to the district court in opposing the motion in limine, so we cannot review the merits of its decision, much less conclude that this preliminary ruling was an abuse of discretion.

Therefore, on the record before us, we conclude that the district court's pre-trial

---

5. · Our decisions concerning whether the doctrine of collateral estoppel precludes a § 1983 defendant from relitigating a state court suppression order have not been uniform. *Compare Tyler v. Berodt*, 877 F.2d 705, 706 (8th Cir.1989), *cert. denied*, 493 U.S. 1022, 110 S.Ct.

723, 107 L.Ed.2d 743 (1990) (Iowa law), *and Duncan v. Clements*, 744 F.2d 48, 51 (8th Cir. 1984) (Missouri law), *with Patzner v. Burkett*, 779 F.2d 1363, 1369 n. 7 (8th Cir.1985) (North Dakota law).

ruling on the motion in limine was not an abuse of discretion, and that the admissibility of the state court's suppression ruling at trial was not properly presented on appeal.

The judgment of the district court is affirmed.