**130 Nev., Advance Opinion 30**

IN THE SUPREME COURT OF THE STATE OF NEVADA

MICHAEL CHARLES MEISLER,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 63034

**FILED**

APR 0 3 2014

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY
CHIEF DEPUTY CLERK

Appeal from a judgment of conviction, pursuant to a jury verdict, of aggravated stalking. Ninth Judicial District Court, Douglas County; Michael P. Gibbons, Judge.

*Affirmed.*

Kristine L. Brown, Gardnerville,
for Appellant.

Catherine Cortez Masto, Attorney General, Carson City; Mark B. Jackson, District Attorney, and Thomas W. Gregory, Chief Deputy District Attorney, Douglas County,
for Respondent.

BEFORE HARDESTY, PARRAGUIRRE and CHERRY, JJ.

*OPINION*

By the Court, CHERRY, J.:

In this case, we are asked to decide whether law enforcement's efforts to locate appellant Michael Meisler by retrieving his cell phone's Global Positioning System (GPS) coordinates from his cell phone service

8/29/14: Corrected per letter to publishers. CJ

14-10532

provider constituted an illegal search. We conclude that Meisler's Fourth Amendment rights were not violated because law enforcement procured a valid arrest warrant before requesting his phone's GPS coordinates. In addition, we hold that the district court did not abuse its discretion in denying Meisler's request to withdraw from self-representation where his request was made with an intent to delay proceedings.

## FACTS

Meisler was in a romantic relationship with Janice Tebo. After the relationship ended, Meisler repeatedly sent Tebo emails, text messages, and letters. The communications from Meisler included references to the movie *Fatal Attraction*, statements that she had made a "fatal decision," allusions to the ancient Greek legend of the Sword of Damocles,[1] and threats to sue her for lying to him. One of the communications stated: "JFK died on this day 48 years ago. Today is also a day u will also not eva forget befitting an Irishpolak lying SLUT. Have a nice day :)." After investigating various reports made by Tebo, the Douglas County Sheriff obtained a warrant for Meisler's arrest. Seeking Meisler's location in order to make the arrest, a sheriff's investigator requested that Meisler's cell phone service provider retrieve his GPS coordinates. The service provider complied, and Meisler was arrested in a public parking lot.

---

[1]The legend recounts a king hanging a sword above Damocles, held to the ceiling by a single horse hair. *See* Marcus Tullius Cicero, *Tusculan Disputations* bk. V, § 21, at 185 (C.D. Yonge trans., New York, Harper & Brothers 1877) (c. 45 B.C.), *available at* http://goo.gl/9cVN57. The king intended that Damocles understand the "constant apprehension[ ]" under which a wealthy ruler must live. *Id.* at 185-86.

During the arrest, Meisler's cell phone was retrieved from his vehicle at his request. The cell phone was kept with his belongings while he was in custody. A valid search warrant was procured before the contents of the cell phone were searched. The search of the cell phone revealed numerous text messages, some of which were eventually used to support Meisler's conviction.

Meisler was charged by information with aggravated stalking, a felony under NRS 200.575(2). On his request, Meisler was canvassed and found competent to represent himself. The court appointed standby counsel. The district court further denied Meisler's request to suppress text messages retrieved from his cell phone as a result of his arrest. The court held that law enforcement did not need to obtain a warrant before using Meisler's phone GPS coordinates to locate him.

On the day before trial, at 4:23 p.m., Meisler filed a motion to withdraw from self-representation. The court denied the motion after argument on the morning of trial because the motion was untimely and filed with the intent to delay the trial.

Following trial, Meisler was convicted by jury verdict of aggravated stalking. Standby counsel was appointed as counsel of record for sentencing. Meisler was sentenced to prison for a maximum of 12 years with parole eligibility after 2 years. The court also issued an extended protective order of 20 years. Meisler appealed.

## DISCUSSION

### Fourth Amendment and GPS data

Meisler argues that his Fourth Amendment rights were violated when officers asked his cell phone service provider to use his cell phone's GPS coordinates to locate him. Specifically, he argues that the

SUPREME COURT
OF
NEVADA

(O) 1947A

arrest was illegal because the officers did not obtain a search warrant before retrieving his GPS coordinates. He also claims that the evidence retrieved as a result of his arrest should have been excluded as fruit of the poisonous tree. Meisler admits, however, that the officers did possess a valid arrest warrant at the time of arrest.

The Supreme Court has stated that "for Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." *Payton v. New York*, 445 U.S. 573, 603 (1980). In *Payton*, the Court noted that "any differences in the intrusiveness of entries to search and entries to arrest are merely ones of degree rather than kind." *Id.* at 589. Hence, under federal law, a search warrant may permit officers the authority to arrest a suspect if probable cause forms during the lawful search. *See Mahlberg v. Mentzer*, 968 F.2d 772, 775 (8th Cir. 1992). Likewise, an arrest warrant may permit officers to seize evidence discovered as a result of a lawful arrest. *See United States v. Pruitt*, 458 F.3d 477, 480-82 (6th Cir. 2006) (concluding that execution of arrest warrant justified seizure of evidence found in third party's home during protective sweep).

Following *Payton* and its progeny, a federal court recently held that "[t]he issuance of the arrest warrant ... undermines any privacy interest in prospective geolocation data." *In re Smartphone Geolocation Data Application*, ___ F. Supp. 2d ___, ___, 2013 WL 5583711, at *15, (E.D.N.Y. May 1, 2013). The court reasoned that searching for a suspect in his home is far more intrusive than seeking geolocation data from a suspect's cell phone, and if the United States Supreme Court has found the more intrusive home search to be reasonable, then a less intrusive cell

phone data search is surely reasonable. *Id.* at \*15-\*16; *see also Steagald v. United States,* 451 U.S. 204, 214 n.7 (1981) ("Because an arrest warrant authorizes the police to deprive a person of his liberty, it necessarily also authorizes a limited invasion of that person's privacy interest when it is necessary to arrest him in his home.").

Thus, an arrest warrant that justifies the physical invasion of the home also justifies a digital invasion into a defendant's cell phone for the purpose of locating the defendant. "The Fourth Amendment cannot accord protection to geolocation data associated with a defendant's cell phone while denying such protection against a physical invasion of his home, as the latter is entitled to the highest order of defense." *In re Smartphone,* ___ F. Supp. 2d at ___, 2013 WL 5583711, at \*15. In this case, officers obtained a valid warrant for Meisler's arrest. Because an arrest warrant would have justified an entry into Meisler's home, an arrest warrant likewise justifies a digital entry into his cell phone to retrieve GPS coordinates for the purpose of locating him.[2] We hold that Meisler's Fourth Amendment rights were not violated and, therefore, that the text messages were not fruit of the poisonous tree.[3]

---

[2]The record is not clear whether Meisler was voluntarily turning his GPS data over to his service provider, but the existence of a valid arrest warrant alleviates any need to discuss Meisler's expectation of privacy.

[3]Even had the government violated Meisler's Fourth Amendment rights in locating him for arrest, the retrieval of text messages from his cell phone might have been so attenuated from the arrest that the fruit-of-the-poisonous-tree doctrine would not be applicable at all. As it is not necessary to our disposition, we merely note the issue and do not opine upon it.

*Meisler's request to withdraw from self-representation*

Meisler argues that the district court erred by not permitting him to revoke his previous decision to represent himself at trial. We disagree.

"It is well established that a defendant may not manipulate the right to counsel for purposes of delaying and disrupting the trial." *People v. Howell*, 615 N.Y.S.2d 728, 729 (App. Div. 1994); *see also Moody v. State*, 888 So. 2d 532, 558-59 (Ala. Crim. App. 2003) (compiling court decisions supporting the proposition that "obstructionist and dilatory conduct . . . may constitute a waiver" of a defendant's right to counsel). We have held that a district court may deny a request for self-representation if the request was made with the intent to delay proceedings. *Vanisi v. State*, 117 Nev. 330, 339, 22 P.3d 1164, 1170 (2001). It follows that a request to withdraw from self-representation may be denied on similar grounds. Other courts have precisely so held: "A district court may refuse a defendant's request to withdraw from self-representation after a valid waiver 'if a defendant seeks counsel in an apparent effort to delay or disrupt proceedings on the eve of trial, or once trial is well underway.'" *United States v. Woodard*, 291 F.3d 95, 111 (1st Cir. 2002) (quoting *United States v. Proctor*, 166 F.3d 396, 402 (1st Cir. 1999)). We agree with the soundness of this rule and hold that a district court may deny a request to withdraw from self-representation when said request is made with an intent to delay or obstruct proceedings.

Here, Meisler's request was made on the eve of trial. He made no mention of his request to withdraw at the pretrial conference, which occurred just hours before his motion was filed. Standby counsel was not prepared for trial and would have needed time to become prepared,

further delaying the proceedings. These facts support the district court's conclusion that the motion was made with an intent to delay proceedings. We defer to that conclusion. Thus, the district court did not abuse its discretion in denying Meisler's request to withdraw from self-representation because his motion was made with an intent to delay the proceedings. We have considered Meisler's other arguments and conclude that they lack merit.[4]

Because Meisler's Fourth Amendment rights were not violated and because his other claims lack merit, we affirm the judgment of conviction.

_____, J.
Cherry

We concur:

_____, J.
Hardesty

_____, J.
Parraguirre

---

[4]Meisler's contention that the evidence was insufficient to convict him of aggravated stalking lacks merit because a rational juror could have interpreted his numerous references to death as death threats. Meisler's argument about the district court's decision to exclude his proposed expert witnesses lacks merit because those witnesses admitted that their testimony would not be relevant. *See* NRS 50.275 (permitting expert testimony when it "will assist the trier of fact to understand the evidence or to determine a fact in issue"); *Williams v. Eighth Judicial Dist. Court*, 127 Nev. ___, ___, 262 P.3d 360, 368 (2011) ("[I]t will assist the trier of fact if it is relevant and supported by competent . . . research.").