POSNER, Circuit Judge,
dissenting.
The arrest of the plaintiff was not based on probable cause, and the dismissal of his suit should therefore be reversed.
I disagree with the majority that Investigator Ditlefsen, the principal defendant, had “arguable probable cause” to arrest Burritt. She had nothing of the sort. A reasonable officer in her position would not have ignored the obvious red flags that arose during her investigation, and so would not have believed that she had probable cause. E.g., Somberger v. City of Knoxville, 434 F.3d 1006, 1016 (7th Cir. 2006). Prior to the arrest Ditlefsen had researched the route that SMH, Burritt’s accuser, had said that Burritt had taken (from Impact Counseling Center to Bur-ritt’s house, and then from his house to SMH’s house), and she had concluded with some help from MapQuest that it would have taken him roughly two hours and twenty-five minutes to drive the alleged route, not including the stops for gas and at Burritt’s house reported by SMH. According to his vehicle log Burritt had left Impact Counseling Center with SMH at 4:15 and SMH’s mother estimated that her daughter had arrived home between 6:30 and 6:45, and that timeline contradicted SMH’s version of events. For how could Burritt have driven a distance that takes two and a half hours to cover nonstop, yet while en route stop to get gas and assault SMH and arrive at her home all in two and a quarter hours or at most two and a half hours? As it turned out, he couldn’t have, and we now know that he didn’t.
Burritt’s former bosses, Bill and Connie Lussier, say that prior to Burritt’s arrest they told Ditlefsen that Burritt could not have driven the route, with stops along the way, in such a short time. Connie Lussier told Ditlefsen that she “had a time, date, location-stamped receipt for Skip [Bur-rittj’s refueling that showed he was telling the truth,” but Ditlefsen brushed her off, even though the receipt showed that Bur-ritt couldn’t have made the stops alleged by SMH yet arrived at her house within two and a half hours. Indeed when the receipt was reviewed by prosecutors, along with data from Burritt’s GPS, the criminal charges against him were dismissed, precipitating the present suit, a civil rights suit against Ditlefsen and her employer.
Ditlefsen told Bill Lussier that she had driven the alleged route and had confirmed that Burritt could have driven it in two and a half hours stops and all, though at *254 her deposition she admitted that she hadn’t driven the entire route; so her time estimate was worthless. Ditlefsen also told the Lussiers, prior to Burritt’s arrest, that his “GPS indicated that [Burritt] was not where he claimed to be.” That was a lie; Ditlefsen did not obtain the GPS until December 7, 2011, when she executed the search warrant and arrested Burritt — and the GPS, like the receipt for gas, proved Burritt’s innocence.
SMH had said that during the assault (which we know never took place), which she claimed occurred in Burritt’s car when it was parked in his driveway just before he went into the house to let his dogs out, she had slammed the car door on Burritt’s hand. A nurse who examined the hand five days after the alleged assault found no signs of injury.
Ditlefsen had all this evidence of Bur-ritt’s innocence be fore she arrested him, but she presented none of it to the judge who issued the search warrant, who if informed of these inconsistencies would not have authorized the search. In sum, Ditlefsen lacked even arguable probable cause to arrest Burritt. The judgment exonerating her should therefore be reversed.
I have a separate concern about the handling of this case — a concern with automatically, uncritically, allowing the arrest of a person in his home when no arrest warrant has been issued. It’s true that the Fourth Amendment does not require search or arrest warrants at all (in retrospect a rather embarrassing omission); the only mention of warrants is found in the clause outlawing general warrants. That clause states that warrants must be based on probable cause, supported by an oath or affirmation, and describing with particularity the target of the warrant. But the only requirement of a lawful search or seizure set forth in the amendment is that it be reasonable; there is no suggestion that a warrant is ever required for a search or an arrest.
Even after the Supreme Court interpreted the Fourth Amendment to require warrants in some circumstances, “warrant-less felony arrests outside of the home routinely ... survived constitutional attack as long as probable cause [to arrest] existed].” United States v. Winchenbach, 197 F.3d 548, 554 (1st Cir.1999). This understanding stemmed from the “the ancient common-law rule that a peace officer was permitted to arrest without a warrant for a misdemeanor or felony committed in his presence as well as for a felony not committed in his presence if there was reasonable ground for making the arrest.” United States v. Watson, 423 U.S. 411, 418, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976). The Court in Watson reasoned that “the public safety, and the due apprehension of criminals, charged with heinous offences, imperiously require that such arrests should be made without warrant by officers of the law.” Id. at 419, 96 S.Ct. 820. Concurring, Justice Powell explained that “logic [ ] would seem to dictate that arrests be subject to the warrant requirement at least to the same extent as searches. But logic sometimes must defer to history and experience.... There is no historical evidence that the Framers or proponents of the Fourth Amendment, outspokenly opposed to the infamous general warrants and writs of assistance, were at all concerned about warrantless arrests by local constables and other peace officers.... In sum, the historical and policy reasons ... fully justify the Court’s sustaining of a warrantless arrest upon probable cause, despite the resulting divergence between the constitutional rule governing searches and that now held applicable to seizures of the person.” Id. at 429, 432, 96 S.Ct. 820.
*255 Yet just a few years later, though two centuries after the ratification of the Fourth Amendment, the Supreme Court declared “that an arrest warrant requirement may afford less protection than a search warrant requirement, but it will suffice to interpose the magistrate’s determination of probable cause between the zealous officer and the citizen. If there is sufficient evidence of a citizen’s participation in a felony to persuade a judicial officer [not just a police officer] that his arrest is justified, it is constitutionally reasonable to require him to open his doors to the officers of the law. Thus, for Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within.” Payton v. New York, 445 U.S. 573, 602-03, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). The implication is that normally an arrest warrant is a prerequisite to arresting a person in his home. The Court did not hold that a search warrant would also allow such an arrest. The Court did say that the Fourth Amendment “prohibits the police from making a warrantless and nonconsensual entry into a suspect’s home in order to make a routine felony arrest,” id. at 576, 100 S.Ct. 1371, but the bare reference to “warrantless” left open the question whether either an arrest warrant or a search warrant would suffice.
In some cases no warrant of any sort is required to authorize an arrest of a person in his home. If police passing by a house hear screams, rush in, and observe a man trying to strangle a woman, they can and should arrest him even though they have no warrant; such an arrest is lawful. And likewise if having approached a home to question a witness officers become aware that a violent, dangerous criminal is inside, as in Cook v. O’Neill, 803 F.3d 296, 299 (7th Cir.2015). The officers in Cook were justified in taking reasonable precautions, including arrest, to minimize danger to themselves and the public. Had they out of an abundance of caution instead removed themselves from potential danger, a dangerous criminal would have escaped.
These are examples of arrests justified by “exigent circumstances” (an emergency), which for obvious reasons allow an arrest to be made without a warrant. Payton v. New York, supra, 445 U.S. at 587, 100 S.Ct. 1371. But there are judicial opinions which say that a search warrant plus probable cause for an arrest is enough to justify an arrest in the home without an arrest warrant even if no emergency requires the officers executing the search warrant to seize (that is, arrest) the occupant of the office or home searched. See, e.g., Jones v. City & County of Denver, 854 F.2d 1206, 1209 (10th Cir.1988). Often in such cases, however — in United States v. Price, 888 F.2d 1206 (7th Cir.1989), for example — there is more. The warrant in that case authorized a search for guns, and they were found. Id. at 1208. The police could not let the defendant wander around the apartment while it was being searched; nor would it have been prudent to collect the guns, leave, and leave him there — to find a gun they had missed, or to flee. He was a dangerous person. Burritt — falsely accused and suing for redress — is not and was not thought to be dangerous even at the time of his arrest.
It bears emphasizing that a search warrant alone is not enough to justify an arrest; there must be probable cause to arrest. See, e.g., United States v. Reinholz, 245 F.3d 765, 778-79 (8th Cir.2001). The search itself may reveal probable cause to arrest the occupant of the residence that is being searched. See, e.g., Mahlberg v. Mentzer, 968 F.2d 772, 775 (8th Cir.1992). Police naturally are reluctant to sit around twiddling their thumbs *256 awaiting the' receipt of an arrest warrant, which may take hours, knowing they have probable cause to arrest the person they’re sitting with. Waiting for an arrest warrant in such a case would be a waste of police resources. Maybe in all such cases, requiring an arrest warrant for the arrest of a person in his home should be waived and the case regarded as one of exigent circumstances.
There were no exigent circumstances in this case. The police had a warrant to search Burritt’s home, although if the issuing judge had been presented with all the relevant information he would have found probable cause lacking and thus not have issued the warrant. But the police did not have a warrant to arrest Burritt. I am mindful of the cases that hold that a warrant to search a residence is a license to arrest anyone found there for whom there is probable cause to arrest. See, e.g., Russell v. Harms, 397 F.3d 458, 466 (7th Cir.2005); see also 3 Wayne R. LaFave, Search & Seizure: A Treatise on the Fourth Amendment § 6.1(c) (5th ed.2015). But most are cases in which the affidavit on the basis of which the search warrant was issued contains all the information that would be required for the issuance of an arrest warrant. See, e.g., Russell v. Harms, supra, 397 F.3d at 466; United States v. Winchenbach, supra, 197 F.3d at 553-55; Jones v. City & County of Denver, supra, 854 F.2d at 1209. But sometimes there is probable cause to think that a person’s home or office contains contraband or some other proper object of a search, but not to think that the person committed a crime. Maybe he’d been asked by a Mend to store a bag of salt and had agreed to do so, having no inkling that the bag was actually full of contraband. He tells the police all this and they have, let’s say, no reason to doubt him — thus no probable cause to arrest him. Such a case was United States v. Reinholz, supra, 245 F.3d at 778-79. And it is not alone. See, e.g., United States v. Connolly, 479 F.2d 930, 936 (9th Cir.1973) (overruled on other grounds in United States v. Bagley, 772 F.2d 482, 490 (9th Cir.1985)).
And what if it’s obvious to the police when they enter to search a house that the owner is having a party, and so there are several persons besides himself in the house or apartment? Does the search warrant authorize the police to arrest all of them? Surely not, which is just to say that probable cause to search a place is not automatically probable cause to arrest everyone found there.
And even if the affidavit on the basis of which a search warrant was issued establishes probable cause to arrest an occupant of the home to be searched, wouldn’t it be better to require that the magistrate have been asked to issue a warrant authorizing both a search and an arrest? Isn’t that the implication of cases like Payton that in defiance of the actual wording of the Fourth Amendment insist that ordinarily a warrant is required not only to search a home but also to arrest a homeowner? But however these questions are answered, the important thing in the present case is that probable cause whether to search or to arrest was lacking and thus the officers were not permitted to arrest Burritt, let alone enter his home to arrest him.
The police report states that “after a short conversation!,] and investigator Dit-lefsen advising BURRITT that we had a search warrant, he did invite us into his residence.” The implication is that he wanted them to enter his house. That is absurd. Since they had a search warrant, Burritt could not object to their entry; they needed no invitation and thus when they say he “did invite” they mean he “did accept the inevitable.” The majority opin *257 ion, which to its credit does not automatically accept the proposition that a search warrant always justifies the arrest of the occupant of the place searched, plucks the “invitation” chord — “Burritt invited the officers into his home” — without remarking the unreality of the “invitation.” The opinion goes on to state that “when a person with authority over the premises consents to an entry by law enforcement, that entry is reasonable and does not infringe on the person’s Fourth Amendment rights.” But that is true only when the occupant can refuse consent. Consent must be voluntary to be legally effective, see Illinois v. Rodriguez, 497 U.S. 177, 181, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990), and in this case Burritt couldn’t refuse entry, because the search warrant gave the officers the right to enter his house without his consent.
The issuance of a warrant signifies that a judicial of officer — a judge or magistrate — has made a determination of probable cause on the basis of an affidavit of a police officer or a prosecutor. So there is a record, which may enable the person arrested (or whose home is searched) pursuant to the warrant to challenge its validity. When there is no warrant, no documentation, just the say-so of the police, it is very difficult for the person arrested or whose home is searched to prove that probable cause was lacking. After the arrest, or after the search, the police will have no difficulty fabricating probable cause to have made the arrest or conducted the search. They will say they learned this or that which persuaded them that the occupant was a dangerous criminal or had contraband — maybe they’ll say they smelled marijuana as they drove past the house in their squad car. Had they said that in an affidavit, the judicial officer might have thought it fishy. Cf. Johnson v. United States, 333 U.S. 10, 14-15, 68 S.Ct. 367, 92 L.Ed. 436 (1948). That is a reason for requiring warrants. If there is no warrant, the occupant is relegated to a civfi rights suit to establish his innocence, and such a suit may be both costly to litigate and, given the propensity of juries to believe police testimony, futile. The ex post remedy for a search or seizure that lacks probable cause is thus likely to be less effective than the ex ante precaution of submission of an application for a warrant to a judicial officer.
Probable cause was lacking in this case, but even if it were present I can’t think of any good reason for the failure of Investigator Ditlefsen, if she thought there was probable cause to arrest Burritt, to have sought an arrest warrant along with a search warrant, or, better, because simpler, a single warrant authorizing both search and arrest.
I would reverse the judgment of the district court.